## In the Matter of the Final Accounting of JAMES FRAZER et al., Executors, etc.

The will of W. gave to his widow "all of the household property in the dwelling-house and the use of the dwelling-house during her life." In the dwelling-house, at the time of the testator's death, was a quantity of coal and wood, provided for family use, and a shot-gun. Upon settlement of the accounts of the executors, *held*, that these articles were properly allowed to the widow ; that the shot-gun might have been provided for the defense of the house, and in the absence of proof the court was not required to presume the contrary.

The appraisers set apart as exempt and for the use of the widow, a horse, phaeton and harness, of the value of $150. *Held*, that the gift of the household property did not preclude this allowance ; that "other personal property" was available for the exemption and might be necessary.

*Peck* v. *Sherwood* (56 N. Y. 615), distinguished.

A claim against the estate, based upon an alleged contract with the deceased, which was presented and sworn to in the ordinary manner, was allowed and paid by the executors. *Held*, that the burden was upon the contestants to show that it was not a just debt, and in the absence of such evidence it was properly allowed.

Statement of case.

M., the claimant, was allowed to testify as a witness to the contract. *Held* no error; as he was not a party, nor did the executors derive any title through or from him. (Code of Civil Procedure, §§ 828, 829.)

Also *held*, that it was no objection to the allowance that the executors could, had they resisted the claim, have excluded M. as a witness to personal transactions with the deceased.

The executors allowed to a widow a claim for the wages of her son P. This was objected to on the ground that she was not authorized to receive them, and that the claim was outlawed when paid. The services ended in March, 1871. P. was then eighteen years of age. His father died in 1877, the payment was made in 1879, previous to which P. had died. No administrator was appointed. *Held*, that as the payment was of a just debt and had gone to the benefit of those entitled, and as the estate could not be required to pay a second time, and so had suffered no wrong, the executors were properly credited with the payment.

The testator, having in his hands a sum of money belonging to his wife, loaned it in 1869, taking notes in the name of his wife. Afterward he included the amount in a mortgage executed to himself by the borrower. The amount, with interest, was allowed to the widow by the executors. It was claimed by the contestant that it was to be presumed that the wife did not consent; that the husband was guilty of a conversion of her money, and so the statute of limitations was set running and the claim outlawed prior to the testator's death. *Held* untenable; that it was to be presumed, in the absence of evidence to the contrary, that the security was taken by the husband, with the consent of the wife; and therefore to the extent of her interest, he held the mortgage as agent or trustee for her.

Also *held*, that interest was properly allowed, as it was earned by the investment and received by the testator.

The will directed the executors to expend a sum not exceeding $2,000 " in repair " of a cemetery lot. A sarcophagus was erected on the lot at the expense of $500, and the testator's remains placed therein. A monument on the lot was exchanged for a better one and headstones to graves erected, and coping replaced at a cost of $935.05. *Held*, that what was done was within the authority and discretion given to the executors.

The testator's residuary estate, including the homestead in which his wife was given a life estate, he gave to his wife, to H., the contestant, and to W. in equal proportions. The executors, at the request of the widow and H., expended $320 in repair to the premises, one-half of which they charged to each. It was objected that but one-third should be so charged. *Held* untenable.

Also *held*, that as the will contained no provisions excluding the widow from dower or repugnant to a claim therefor, the acceptance by her of the provisions in the will for her benefit did not deprive her of the right to make the claim.

(Argued March 26, 1883 ; decided April 17, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made the second Tuesday of June, 1882, which affirmed a decree of the surrogate of the county of Livingston upon the final accounting of the executors of the will of Harlow W. Wells, deceased.

The will, after giving various legacies, contained these provisions.

"All the rest and residue of my estate, both real and personal, I give, devise and bequeath to my beloved wife, Frances C. Wells, Henry M. McDonald and Willard Wells McDonald, to be equally divided between them; I do hereby authorize and direct my executors, hereinafter named, to sell the property in the village of Caledonia, and the farm north of said village, on such terms as they may think best. The McDonald farm is not to be sold, and my brother, Horace Wells, is to have his support out of my said property for and during the term of his natural life, and I hereby direct my executors, hereinafter named, to reserve in their hands sufficient thereof for that purpose, and to apply the same for said purpose. I hereby authorize and direct my executors, hereinafter named, to expend a sum not to exceed $2,000 in the repair of the burying lot of W. H. Smith, and that my body should be kept in a receiving vault in Leroy until such repairs can be made. I also give, devise and bequeath to Mrs. Carr, wife of William Carr, of Caledonia, the house and lot where she now resides, and direct my executors to deed the same to her. I likewise give, devise and bequeath to my wife, Frances C. Wells, all of the household property now in my dwelling-house, in the village of Caledonia, and the use of said dwelling-house for and during the term of her natural life, and direct that said dwelling-house shall not be sold during her said life."

The testator died in 1877. He owned at the time of his death two farms — one known as the McDonald farm and several lots in the village of Caledonia, on one of which was the "dwelling-house" specified in the will.

There was at the time of the testator's death, in an out-house, four tons of coal and four cords of wood provided for family use; also a shot-gun; these were allowed by the executors to the widow. A horse, phæton and harness, appraised at $150, were set apart by the appraisers for the widow, and allowed by the executors.

One Mullin presented a claim, duly verified, for his personal services on the farm of the testator. The executors allowed this claim. On the final settlement Mullin was sworn, and proved a contract for such work with the testator. The contestant excepted to such testimony.

Peter Tierney worked for the testator from May 2, 1870, to March 16, 1871. At the last mentioned date he was a minor of about eighteen years of age. His father, John Tierney, was then living in the town of Caledonia. He settled with the testator in his life-time after the 16th day of March, and about May 14, 1874, excluding from such settlement his son's wages, and made no claim then or afterward upon the testator therefor. The father died about November 1, 1877; the son, Peter, died before both the testator and his father; the mother, personally, without being appointed administrator, presented a claim for this work for $106.92, and the executors paid her the same. Before this, Henry McDonald, the contestant, objected to the payment of this claim, and asked that it be referred, under the statute, which the executors declined.

Mrs. Wells had, before February 3, 1869, given her husband $380 to loan for her. On that day he, as her agent, loaned this sum to one Alexander McPherson, and took for it his note, payable to Mrs. Wells in one year, with interest. On the 1st day of February, A. D. 1870, said McPherson executed and delivered to the testator his bond and mortgage for $2,000, part of the consideration for which was said note. The executors allowed to the widow the amount of the note, with interest.

Under the power given in the will, the executors expended out of the moneys of the estate $500 in making and erecting upon the said cemetery lot mentioned in the will a sarcophagus, or walled tomb, for the remains of the testator and his wife.

They also exchanged the monument on the lot for another, and caused new head-stones to be put to all the graves, and repaired the coping around the lot. For this, in addition to the old monument exchanged, they paid out of the estate the sum of $935.65. Before the executors did any thing on the lot the contestant objected to this last expenditure.

Under the power contained in the will, the executors sold and conveyed two of the village lots of which the testator died seized. The widow joined in this deed, and out of the avails the executors paid her as and for her dower therein the sum of $300.95.

The executors expended the sum of $320 in making permanent repairs upon the homestead, the life estate of which was by the will given to the widow. This was done on the request of the widow and the contestant, and the executors charged it in their account, one-half to each.

The action of the executors in the matters above stated was approved by the surrogate, and the items so paid by them allowed.

*Angus McDonald* for appellants. Household property does not include coal, wood and double-barrel shot-gun, or either of those articles. (Roper on Legacies, 273 ; *Dayton* v. *Fellow*, 1 Rob. 28 ; *Cole* v. *Fitzgerald*, 1 S. & S. Eng. Ch. 189.) The executors should be charged with the horse, phaeton and harness, $150, claimed to be set apart as exempt. (*Peck* v. *Sherwood*, 56 N. Y. 615 ; *Applegate* v. *Cannon*, 2 Bradf. 119 ; *Clayton* v. *Wendell*, id. 7 ; *Applegate* v. *Cannon*, id. 119 ; *Bliss* v. *Sheldon*, 7 Barb. 152 ; affirmed, 8 N. Y. 35.) Executors are trustees for creditors and legatees. They must simply see right and justice is done, and that as between them each has his legal rights. (2 Perry on Trusts, 106 ; Tiffany and Bullard on Trusts, 483 ; 2 Story's Eq. Jur. 502 ; Redfield's Surrogate, 222–4 ; McClelland's Surrogate [2d ed.], 434 ; *Dox* v. *Blackenstose*, 12 Wend. 542 ; McClelland's Surrogate, 607 ; *Martin* v. *George*, 9 N. Y. 398 ; *Freeman* v. *Freeman*, 2 Redf. Surr. 137 ; *Bucklin* v. *Chapin*, 1 Lans. 448 ; *McLaren* v. *McMartin*, 37 N. Y. 88 ; § 829 of New Code ; 36 N. Y.

88; § 382, Rev. Stat. [3d ed.] 152; Dayton's Surrogate, 383; *Williams* v. *Purdy*, 9 Paige, 109; *Westervelt* v. *Gregg*, 1 Barb. Ch. 471; *Flagg* v. *Rveder*, 1 Bradf. 197; *Metzger* v. *Metzger*, id. 265; 2 Smith's Practice, 122; *Valentine* v. *Valentine*, 4 Redf. 265; *Westervelt* v. *Gregg*, 1 Barb. Ch. 471; 2 Perry on Trusts, 106; *McLaren* v. *McMartin*, 36 N. Y. 88.) Neither the affidavit of the claimant on his proof, nor his evidence as to personal transactions with the deceased, can be used on the final accounting in favor of the executors. (Dayton's Surrogate, 383; 6 Paige, 169; 1 Bradf. 197–205; 1 Barb. Ch. 471; § 829 of New Code; *Whitehead* v. *Smith*, 81 N. Y. 151; *Wilkins* v. *Baker*, 24 Hun, 32; § 829 of Code.) If, at the time the testator took the $2,000 mortgage and gave up the note his wife consented to it, then he was immediately liable to her for so much money had and received. If she did not know or consent, she might have an action for conversion, if she were alive and so elected. (*Boyce* v. *Brockaway*, 31 N. Y. 490; Angell on Limitations, § 394; *Kelsey* v. *Griswold*, 6 Barb. Sup. Ct. 436; *Boughton* v. *Flint*, 74 N. Y. 478.) In either case the cause of action then accrued, and the statute commenced to run. (Angell on Limitations, § 304; *Kelsey* v. *Griswold*, 6 Barb. Sup. Ct. 436; *Payne* v. *Gardiner*, 29 N. Y. 167; *Stacy* v. *Graham*, 14 id. 492; *Power* v. *Hathaway*, 41 id. 214–19.) The statements and verified accounts of Mrs. Wells, in which she credits interest for two years, down to Feb. 1st, 1872, are evidence. (§ 829 of Code; *Risley* v. *Wightman*, 13 Hun, 165; Code, § 403; *Reynolds* v. *Collins*, 3 Hill, 37; *Howell* v. *Babcock's Ex'rs*, 24 Wend. 488; *Buckley* v. *Chapin*, 1 Lans. 499; *Sanford* v. *Sanford*, 62 N. Y. 553.) The executors were not authorized to pay the $935.65 in addition to the $500, for the sarcophagus, in exchange for monuments. (Abbott's Law Dictionary, word "repair;" 29 How. Pr. 429; 24 N. J. Eq. 373; *Emans* v. *Hickman*, 12 Hun, 425; *Owen* v. *Bloomer*, 24 id. 296; *Fenvir* v. *Sedgwick*, 41 N. Y. 315; *Springsteed* v. *Sampson*, 32 id. 703; *Matter of Elracher*, 3 Redf. on Surr. 8; *Matter of Luckey*,

4 id.. 495.) By accepting her portion under the will the widow elected to take it instead of her dower. (*Adsit* v. *Adsit*, 2 Johns. Ch. 448; *Tobias* v. *Ketchum*, 32 N. Y. 319; *Chamberlain* v. *Same*, 43 id. 444; *Canfield* v. *Sullivan*, 85 id. 159; *Tobias* v. *Ketchum*, 32 id. 327; *Savage* v. *Burnham*, 17 id. 561; *Dodge* v. *Dodge*, 31 Barb. 413; Ex. A. Fol. 137 of case; *Pearson* v. *Pearson*, 1 Brown's Ch. 292, and note; *Vernon* v. *Vernon*, 53 N. Y. 352; *Dodge* v. *Dodge*, 31 Barb. Sup. Ct. 413; 32 N. Y. 327; 17 id. 561; *Parker* v. *Somersby*, 27 Eng. Law & Eq. 154; *Herbert et al.* v. *Wren et al.*, 7 Cranch, 370–8; *Birmingham* v. *Kirwin*, 7 Sch. & Lef. 452; *Colgate's Ex'r* v. *Colgate*, 53 N. J. Eq. [8 C. E. Green] 372; *Chalmers* v. *Storel*, 2 Ves. & Bea. 223; *Mills* v. *Mills*, 28 Barb. Sup. Ct. 457; *Dickinson* v. *Robinson*, Jacob, 509; *Dodge* v. *Dodge*, 31 Barb. Sup. Ct. 413; *Burley* v. *Boyce*, 4 Strobh. [S. C.] 84; *Savage* v. *Burnham*, 17 N. Y. 577; *Wood* v. *Wood*, 5 Paige, 601.)

*Lucius N. Bangs* for respondent. The widow was entitled, as legatee, to the coal, wood and shot-gun in the testator's house, which were delivered to her. (*Dayton* v. *Tillow*, 1 Robt. 21.) There being nothing in the will, which by language or inference can make the provision for the widow take the place of her dower right in the property of the testator, she is not driven to an election, but takes the provision under the will in addition to her dower right. (*Jackson, ex dem. Loucks*, v. *Churchill*, 7 Cow. 287; *Bundig* v. *Bundig*, 3 Kay & Johns. 257; *Jackson* v. *Churchill*, 7 Cow. 290; *Ellis* v. *Lewis*, 3 Hare, 310; *Sanford* v. *Jackson*, 10 Paige, 266–270; *Dawson* v. *Bise*, 1 Keene, 761; *Harrison* v. *Harrison*, id. 765; *Holdrich* v. *Holdrich*, 2 Y. & C. Ch. 20; *Havens* v. *Sackett*, 15 N. Y. 365, 371, 372; *Adsit* v. *Adsit*, 2 Johns. Ch. 448; *Church* v. *Bull*, 2 Denio, 430, 431; *S. C.*, 5 Hill, 200; 1 Jarman on Wills [Bigelow's ed.], 458, n. 2; 2 Jarman on Wills [R. & T. ed.], 22–24; *Fuller* v. *Yates*, 8 Paige, 325; *Havens* v. *Havens*, 1 Sandf. Ch. 324–329–331; *Gibson* v. *Gibson*, 17 Eng. Law & Eq. 349–352; 2 Jarman on Wills

[R. & T. ed.], 29; *Gibson* v. *Gibson*, 17 Eng. Law & Eq. 349–353. See *Mills* v. *Mills*, 28 Barb. 454.) The claim of dower is favored. (*Lasher* v. *Lasher*, 13 Barb. 106; 2 Jarman on Wills [R. & T. ed.], 25, 29; *Thompson* v. *Burra*, 16 Eng. Law & Eq. 592–602; *Kenedy* v. *Nedrow*, 1 Dal. 415–417; *Leonard* v. *Steele*, 4 Barb. 20; Jarman on Wills, chap. 14, Election.)

FINCH, J. The provision of the will giving to the widow "all of the household property in the dwelling-house" is broad enough to include the coal and wood provided for the use of the family, and also the shot-gun, in the absence of proof showing that it was not kept for the defense of the house. (*Dayton* v. *Tillou*, 1 Robt. 21; *Cole* v. *Fitzgerald*, 1 Sim. & Stu. 189.) Such may have been its use and purpose, and we are not required to presume the contrary from any fact given in evidence. The ruling of the surrogate in these respects was correct.

The appraisers set apart as exempt and for the use of the widow a horse, phaeton and harness of the value of $150, which it is now said were not "necessary," since she took under the will all the household property, and the use of the house for life. If we could so decide, where the testator had given to the widow the use of all his real and personal property, except a legacy due him (*Peck* v. *Sherwood*, 56 N. Y. 615), we cannot say it where only the household property is given. In such a case "other personal property" is available for the exemption, and may be necessary. When the appraisers have so determined and the surrogate approved, there is no basis left for us, unless upon very different facts, on which to found a reversal of such conclusion.

Certain payments of alleged debts against the estate are questioned, and the executors sought to be charged with their amount. All of them are shown to have been honest debts, and honestly due. No adequate reason is given why the executors should have suspected their justice, or doubted the propriety of their payment. What is said amounts only to an assertion that the executors might possibly have resisted them

with success, and were bound to make the effort. One of these claims was that of Mullin. It was based upon an alleged contract with the deceased, and presented and sworn to in the ordinary manner. The executors having paid it and produced their voucher, the burden was on the contestants to show that it was not a just debt of the estate. They showed nothing of the kind. All the proof is the other way, and the sole point of their criticism is that the executors could have kept out proof of the contract by resisting the claim, and shutting out Mullin as a witness to personal transactions with the deceased. But that does not follow. If the executors had defended, proof of the contract might have come from some other source. And in any event there is evidence of the value of Mullin's services reaching quite to the level of his claim. We think Mullin was a competent witness. He was not a party, nor did the executors derive any title or interest from him. They neither owned the debt, nor asserted any title to it. As the contestants did not establish that the demand was unjust, and not a debt of the estate, the payment by the executors was properly allowed.

The objection to the payment made Mrs. Tierney, for the wages of her son Peter, appears to have been that she was not authorized to receive them, and they were outlawed. The services ended in March, 1871. Peter was then eighteen. The statute did not begin to run against him until 1874. (Code, § 396.) The payment was in 1879. Peter had died at some time previous, but when we do not know. His father died in November, 1877. If the wages belonged to the father it is claimed they were outlawed; but if they belonged to the son it is not claimed that they were barred by the statute, but only that the mother, not having been appointed administrator, could not lawfully discharge the debt. But the estate of Wells has suffered no wrong. It cannot be made to pay the debt a second time, for the statute is a bar. It was an honest debt, and has gone to the benefit of those entitled. The executors should not be charged with it unless by their act the estate has suffered some loss. It has suffered none and can suffer none;

and we ought not to punish executors for omitting a precaution, which would have been wise, but which time has rendered unnecessary for the safety of the estate committed to their care.

The third payment questioned was made to the widow. The fact that the testator had $380 of her money and loaned it in 1869 and afterward included the amount in a mortgage taken to himself is not disputed. But the statute of limitations is again relied on. The husband was allowed by the wife to retain the money. There was no conversion by him for which trover could have been maintained. The transaction amounted to a trust or a deposit. Originally the money was loaned to McPherson, and the notes taken in the name of the wife. In February, 1870, McPherson wanted more money on his bond and mortgage, and the testator loaned it, including in the security taken in his own name the debt due his wife. Whether this was done with the knowledge and assent of his wife we do not certainly know, but assuming that it was, unless she loaned him the money, which is not shown, he held the mortgage to the extent of her money in it as her agent or trustee. If she so consented, which is most probable, she became in equity the owner of a proportionate part of the mortgage, but was not entitled to receive the money until it was paid, and could maintain no action until her right was in some manner denied. But we are asked to presume that she did not consent in order to make her husband a wrong-doer, and guilty of a conversion of the money, and so set running the statute of limitations, and outlaw the demand before the death of the testator, and thus make the executors liable for an improper payment. The burden was upon the contestants to prove their case. We cannot relieve their failure by presuming that the husband was guilty of a conversion of his wife's money, when it is both possible and probable that he merely invested it in his own name for her benefit, and with her knowledge and consent. The relation of the parties to each other, their conduct, and all the facts disclosed indicate such to have been the truth of the transaction, and, therefore, that the claim of the wife was just, and not barred by the statute of limitations.

On that basis interest was payable to the widow because earned by the investment of her money and received by the testator for her.

The will directed the executors to expend a sum not exceeding $2,000 in the repair of the cemetery lot of W. H. Smith, who was testator's father-in-law, and that his body should be kept in a receiving vault in Le Roy until such repairs be made. After his death a sarcophagus was erected upon the lot at a cost of $500 and his remains placed therein. After this, the monument on the lot was exchanged for a better one, headstones to graves erected, and coping replaced at a further cost of $935.05. This last expenditure is objected to on the ground that a new monument was not "in repair" of the lot, and there being a sarcophagus there was no need of a monument. It can scarcely be necessary to review a discretion exercised by the executors and kept within the limit fixed by the testator himself. What was done was plainly within the authority of the will and was reasonably and fairly executed.

Certain repairs were put upon the homestead amounting to $320, which were done at the request of the widow and Henry McDonald. One-half was, therefore, charged to each. Under the will the widow had a life estate in the homestead. The remainder in fee went to Henry and Willard McDonald. The repairs benefited both the life estate and the remainder. The executors were not bound to make them so far as the facts disclose. What they did was to advance to the widow and Henry $320 out of the estate, at their request, which was expended for their benefit and in accordance with their direction. Why they should not be charged with what they had, and why the executors should personally pay one-third of it, we are unable to perceive.

Finally, it is objected that the widow was not entitled to dower because the provisions for her benefit under the will were accepted by her, and dower was excluded by the manifest intention of the testator derived from the scope and tenor of the will. No trust estate was vested in the executors. They had simply a power of sale, with no right to rent or

lease, and no control over the rents and profits. No duty relating to the real estate was imposed upon them except to sell and convey. Dower, therefore, was not excluded by the creation of a trust estate inconsistent with it, vested in the executors. (*Savage* v. *Burnham*, 17 N. Y. 561; *Tobias* v. *Ketchum*, 32 id. 327.) The provision giving the rest, residue and remainder of his property to the widow and the McDonalds is not inconsistent with dower, for it relates to the division of his estate, and does not purport to dispose of hers. The two may stand together. The intention manifested in the will was not an equal division of all his property among the three, as in *Chalmers* v. *Storil* (2 Ves. & Bea. 222), a case shaken by subsequent criticism. (*Gibson* v. *Gibson*, 17 Eng. L. & Eq. 349.) But the equal division aimed at is of· a residue which may well be deemed the remainder of the property subject to the dower right. (*Havens* v. *Havens*, 1 Sandf. Ch. 324; *Mills* v. *Mills*, 28 Barb. 456.)· The repugnancy, therefore, which drives the widow to an election must come, if at all, from the provision for the support of testator's brother, those directing a sale, and that devising a house and lot to Mrs. Carr. It is conceded that the support of the brother was simply charged upon the McDonald farm, which was not to be sold. The existence of such a charge does not necessarily exclude the widow's dower in the same land, especially since the executors are also directed to reserve in their hands sufficient of testator's property for the purpose of that support. The devise to Mrs. Carr and the direction to sell and convey a part of the real estate do not necessarily conflict with the right of dower in the present case. (*Jackson* v. *Churchill*, 7 Cow. 287; *Havens* v. *Havens, supra; Fuller* v. *Yates*, 8 Paige, 325.) Directions for a sale may be so expressed and the purpose to be answered of such peculiar character as to indicate an intention to exclude dower. (*Vernon* v. *Vernon*, 53 N. Y. 362.) But no unusual or peculiar state of facts exists in the present case to compel an inference that the property directed to be conveyed was to pass free and discharged from the widow's dower. There is enough in the will to produce hesitation

and reflection, but not enough to establish that clear repugnancy, that manifest intention which is alone sufficient, in the absence of express words, to drive the widow to her election.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.