## SURROGATES' COURT.

In the Matter of the Application for the sale of the Real Estate of CALEB B. LE BARON, deceased, for the payment of his debts.

*Claims against a decedent, presented to administrator and admitted to be valid— On whom is burden of proof— Where the objector is merely a creditor, section 829 of Code of Civil Procedure excluding a party interested from testifying does not apply.*

Upon an application for the sale of the real property of a deceased person for the payment of his debts, it appeared that such debts were largely in excess of the value of the real estate. A creditor objected to the claims of sisters, heirs and survivors of decedent, upon the grounds that the proof of the indebtedness was too indefinite, and because, under the Code, the evidence of these parties concerning conversations or transactions with the decedent should be excluded:-

*Held, first,* that these claims having been presented to the administrator and by him admitted to be valid, the burden of proof is upon the objector.

*Second.* The testimony as to conversations or transactions with the decedent not being against the administrator or survivor of a deceased person, the objector being merely a creditor, section 829 of the Code, excluding a party interested from testifying "against the executor, administrator or survivor of a deceased person," &c., does not apply.

*Kings county, July,* 1884.

*Blanchard, Gay & Phelps,* for administrator and for Mary E., Oceana H., and Anna G. Le Baron.

*George Wilcox, Rufus L. Scott, Mr. Powell, Adrian Van Sinderen* and *A. W. Gleason,* for objecting creditors.

BERGEN, *J.*— This is an application brought under section 2750 of the Code of Civil Procedure directing the sale of real property of a deceased person for the payment of his debts. Upon the return of the citation a number of creditors appeared and presented their claims. The claims of Anna G. Le Baron for $2,405.57; Oceana H. Le Baron for $19,305.50; and Mary E. Le Baron for $23,372.53; and the administrator for

the sum of $926.40, were disputed. It appears by the evidence that the personal property is insufficient to pay the debts of the decedent, and therefore the creditors are compelled to resort to the real estate of the decedent for the payment of the same. It also clearly appears that the debts of the decedent are largely in excess of the value of the real estate, and that in no event could the creditors receive more than a small *pro rata* amount of their claims. William A. Jones, who has presented and proved his claim, objects to the claims of the Le Baron family, to wit: Oceana H. Le Baron, Mary E. Le Baron, and Anna G. Le Baron, who are sisters of the decedent, first, upon the ground that the proof of the indebtedness is too indefinite; second, that under section 829 of the Code all the evidence of these parties concerning conversations or transactions with Caleb B. Le Baron should be excluded; third, that the discharge in bankruptcy of Caleb B. Le Baron estops these claimants from establishing their claims.

I have carefully reviewed all the testimony taken in these proceedings, and am of the opinion that these claims were sufficiently proved, unless the testimony given by the claimants as to the conversations and transactions with the decedent should be stricken out. It appears from the account of the administrator on file in this office, and the evidence in these proceedings, that the administrator had admitted these claims. The petitioning creditor simply objects to the said claims, but offers no evidence to show that they are not valid.

It seems to me that the claims having been presented to the administrator and by him admitted to be valid claims against the estate, establishes *prima facie* their validity, and puts the burden of proof upon the objector (*Matter of Fraser*, 92 *N. Y.*, 239). Section 828 of the Code declares "that a person shall not be excluded or excused on account of interest except as otherwise specially provided." Nor do I think that it comes within the exception provided in section 829 of the Code, which declares "that a person or a party interested in the event * * * shall not be examined in his own behalf

Matter of the Application, &c., of Caleb B. Le Baron, deceased.

or interest * * * against the executor, administrator or survivor of a deceased person * *· * concerning a personal transaction or communication between the witness and the deceased person, * * * except when the executor, administrator or survivor * * * is examined in his own behalf , * * * concerning the same transaction or communication." To exclude evidence under this section, the case must be brought strictly within the wording of the statute. It is not enough to be within its spirit (*Seven* agt. *National Bank of Troy*, 18 *Hun*, 228; *Lobdell* agt. *Lobdell*, 36 *N. Y.*, 327). The testimony referred to is not against the administrator or survivor, as the statute says it must be. The administrator admits the claims and the survivor does not object to the evidence. The objector is merely a creditor of the decedent. The statute was enacted to protect the representatives of deceased persons, and they are the only persons who can take advantage of it.

The claimants in this proceeding are the sisters, heirs and survivors of the decedent. They loaned him a large portion of their property, and trusted implicitly in his integrity and ability to pay them. In my opinion they have a strong legal and moral claim upon his estate for the payment of the same.

The only question remaining to be determined is, does the discharge in bankruptcy of Caleb B. Le Baron, in 1868, operate as a discharge of these claimants' debts.

It appears from the evidence that the claim of Anna G. Le Baron arose after the discharge was granted, and therefore is not affected by it; and that the portions of the claims of Oceana H. Le Baron and Mary E. Le Baron which arose prior to the granting of the discharge are not barred by it inasmuch as the proceedings in bankruptcy of Caleb B. Le Baron omitted to mention them as creditors, and that they did not receive any notice of the said proceedings, and that they had no knowledge that he had been discharged in bankruptcy.

I am of the opinion from the evidence that the decedent, Caleb B. Le Baron, willfully and fraudulently omitted their

names from the schedule of his debts in bankruptcy; that he never caused them to be notified of the said proceedings for his discharge; that he knew he was in debt to these claimants, his sisters, and knew where they resided, as they frequently visited him at his office during and before the time when the proceedings in bankruptcy were in progress. He commenced, in 1850, paying money on account of his indebtedness to each of his said sisters and continued so doing until within a month of his death. By omitting their names from the schedules in bankruptcy, and keeping them and each of them in entire ignorance of his proceedings therein, he deprived them of the right to resist his discharge or to participate in their share of the dividends of his assets.

In the case of *Batchelder* agt. *Low* (8 *Nat. Bankruptcy Register*, 571), it was held " that the discharge is to be pleaded in suits upon claims in courts where pending, and those courts must to some extent determine the validity and effect of the pleas. No other court could consider them and render judgment upon them in those cases. The provision in the same section, that the certificate shall be conclusive evidence of the fact and regularity, seems to relate to the mode of proof of the discharge and not the effect of it when proved. As now understood, the provisions of the bankrupt act do not prevent plaintiffs from contesting the validity of the discharge as to them in this court by showing that it was obtained upon proceedings of which they were fraudulently deprived of notice."

In the case of *Poillion* agt. *Lawrence* (77 *N. Y.*, 211), it was held that where a bankrupt applied for a discharge in a name other than the one in which he contracted the debt, thus depriving the creditor of any notice of the application for his discharge, that it could be attacked in the court in which the creditor sought to establish his claim, and that the discharge would be held inoperative as to the debt of the creditor defrauded thereby by reason of the failure to make him a party to the proceeding by proper publication or otherwise.

I am, therefore, led to the conclusion that by reason of the

bankrupt having willfully and fraudulently omitted the names and claims of his sisters from his schedules of his debts, and not having given them any notice of the application for his discharge, that the discharge can be attacked by them in this court, and so far as the same affects said sisters it is inoperative.

In reference to the claim of the administrator for having paid taxes upon property at East New York, Kings county, amounting to $926.40, on November 20, 1883, it appears from the evidence that the same had accumulated upon the property now sought to be sold under these proceedings, for the years 1871, 1872, 1873, 1874, 1875 and 1876, and the property was sold by the state comptroller for arrears of taxes of those years, and that the administrator redeemed the same on the 20th day of November, 1883, in order that the property might not be charged with the additional interest of ten per cent.

While the administrator, strictly, has nothing to do with the real estate of the decedent, and has no right to apply the personal property in payment of claims against the real estate, still, the only property the decedent left of any value was this real estate in question, and the administrator having acted in good faith, and for the best interest of the estate, in redeeming the property from the sale for the unpaid taxes which had been levied and confirmed as a lien upon this real estate prior to the death of the decedent, I think that the same should be allowed to the administrator as a preferred claim against the decedent, with interest thereon from November 20, 1883; for if it had not been redeemed, the taxes would still remain as an existing and first lien upon this property. The administrator having paid them, he should be subrogated to the right the state had against the property for the unpaid taxes.

A decree may be entered in accordance with this opinion upon two days' notice.