## SUPREME COURT.

MARY HOLLAND and others agt. FREDERICK SMYTH and another, executors, &c., of THOMAS GUNNING, deceased.

*Will — Bequest for masses valid.*

A testamentary provision for masses for the benefit of the testator's soul is valid and should be upheld.

*Kings County, Trial Term, January*, 1886.

*E. H. Benn*, for plaintiff.

*David McClure*, for defendant Smyth.

CULLEN, J.—In this case the testator has given his residuary estate to his executors to be expended for masses for the benefit of his soul. In *Gilman* agt. *McArdle* (99 *N. Y.*), a gift *inter vivos* for that purpose was held a valid contract. It is claimed, probably correctly, that the case cited is not decisive of the one at bar, because here is a testamentary disposition instead of a contract. The objection urged to this as a testamentary disposition is that it fails as a trust for the want of a living beneficiary. Such an objection does not apply to a charity under the English law, and it seems settled by authority that such part of the English common law of charitable uses became the law of this state (*Williams* agt. *Williams*, 8 *N. Y.*, 527; *Owens* agt.

Holland agt. Smyth.

*Missionary Society*, 14 *id.*, 298; *Beekman* agt. *Bousor*, 23 *id.*, 298). As a rule, all pious uses were within the law of charities (*Perry on Trusts*, sec. 78). But it is contended that this use is an exception, because it was dictated by desire for personal advantage to the testator, and some authorities support this claim. The trial court so held in the case of *Gilman* agt. *McArdle*.

But granting that this bequest is not for a charitable use, I am still of opinion it must be upheld. Provisions for monuments and expenses of funerals are common in wills, and while in most cases they have been assumed to be good, rather than the question of their validity discussed, still, whenever the question has directly arisen they have been upheld. In *Bainbridge's Appeal* (97 *Penn.*, 482), the testator directed his whole residuary estate to be expended in a monument. It was held that the executor had a right to apply all the estate remaining in his hands for that purpose. In answer to the claim of the next of kin, the court say: "We will not consider the wisdom or folly of this disposition. He had a right to make it. He did make it. We can see no cause to set his will at naught or impair its force."

In *Detwiller* agt. *Hartman* (37 *N. J. Equity*), testator directed his executors to erect a monument at a cost not exceeding $50,000 nor less than $40,000. It was held that the trust to buy a burial plot and erect the monument was valid. In the opinion delivered in the case, the chancellor says: "To hold otherwise would be to deny the right of the testator to dispose of his estate. It is conceded that a testator may make provision by his will for the erection of a memorial to himself at his grave, but his right to provide for one so expensive as that which this testator contemplated, and for which he has provided in his will, is denied. It is obvious that if the right to dispose of any part of his estate exists, as it undoubtedly does, this court cannot limit its exercise."

In the case of *Mellick* agt. *Guardians of the Asylum* (1 *Jacobs*, 180), the master of the rolls held the same doctrine.

Holland agt. Smyth.

In *Cole's Executors* agt. *Higgs* (27 *N. J. Equity*, 308) it was held that the executors could recover of the devisee a legacy to erect a fence around the burial lot of the testator's mother, where the legacy had been charged upon the land.

In *Emmons* agt. *Hickman* (12 *Hun*, 425), justice GILBERT says: "It was competent for the testator to direct that the whole estate be spent for funeral services and a monument." It must be admitted, however, that this remark was obiter.

In *The Matter of the accounting of Frazer* (92 *N. Y.*, 239), the will directed the executors to expend a sum not exceeding $2,000 in the burial lot of the testator's father-in-law. Question having arisen as to the propriety of certain expenditures under this provision, the expenditures were held proper, the validity of the direction itself passing unchallenged.

Bequests of this character for funerals or monuments cannot be sustained as charities, though some remarks of Mr. Perry, in his work on *Trusts* (*sec.* 706), would support such a claim. I think the learned author has fallen into an error. The crucial test whether legacies are charitable is the application of the law of mortmain and the rule against perpetuities. In every case within my research in which the question has arisen, legacies for the erection of monuments have been held not within the mortmain act, and hence valid when charged on land, and legacies for the continuous repair of monuments void as creating perpetuities. In all the cases the decision has been rested squarely on the ground that the purpose was not a charity. So in the case of *Detwiller* agt. *Hartman*, though the trust for the erection of the monument was held good, the trust for its repair was held bad.

It follows that there is a certain class of testamentary dispositions, the object of which is solely the benefit, real or supposed, of the testator, or the gratification of his desires, which, if trusts, are not charities, nor do they have any beneficiary, yet nevertheless are unquestionably valid. The precise legal doctrine on which they rest, the cases do not state. It may be that they are not to be treated as trusts, but as conditional lega-

.cies, so that if the executors or donee fail or refuse to carry out the objects for which the legacies are given, the legacies would revert to the estate. However, that may be, in this case the donee is discharging the conditions imposed by the testator, .and the question does not arise.

I think a provision for masses for the benefit of the testator's soul is exactly akin to a provision for his funeral or monument, while ·decent burial is given by the law out of even an insolvent's estate. I think the monument is no more an adjunct or concomitant of burial than the masses. One testator may direct his whole estate expended in the pomp of a funeral pageant, a second in a monument to commemorate his name, .a third in religious services for the benefit of his soul. It is a matter of taste and of religious faith. I think all the directions ·are of the same general character and equally good in law.

The conclusion here reached is supported by the able opinion of the late surrogate of this county in *The Matter of Hagen-.meyer's Will* (12 *Abb.* [*N. C.*], 432).

Judgment for defendant.