A testator died leaving no minor children, but a widow and adult children. He devised to the wife specific real estate in lieu of dower "and also of all statutory allowances." *Held* that, where she elected to take under the will, she was not entitled to dower, nor to her quarantine, nor to the exemption given by Code Civ. Proc. § 2713, but that such election was not a waiver of her distributive share in the personalty.

2. SAME.

Where testator, after devises of realty, by his will directs the balance of his property to vest in the persons entitled thereto by the law of the state, his widow is entitled, under Code Civ. Proc. § 2732, to one-third of the personalty.

In the matter of the final settlement of the account of Edward K. Mersereau, executor of Jesse Woughter, deceased. Objections dismissed.

E. C. Moody and R. A. Gunnison, for Edward K. Mersereau, executor.

T. L. Arms, for Jennie Woughter Courtright.

S. Mack Smith and J. A. Brown, for contestants Angeline Barney and Ermina Olmsted.

PARSONS, S. Jesse Woughter, residing in the town of Union, Broome county, N. Y., died July 16, 1898, leaving a last will and testament bearing date July 16, 1897, which was admitted to probate July 28, 1898.

The said Jesse Woughter left him surviving a widow, Jennie Woughter, who has since remarried, and now bears the name of Jennie Woughter Courtright, and two daughters, Angeline Barney and Ermina Olmsted, children of a former wife. All of said parties were adults. At the time of his death Woughter owned real estate of the value of about $3,900, and the value of his personal property, according to the inventory on file, was $29,319.30. The day that the will was offered for probate, July 28, 1898, both the widow and the two daughters were present in surrogate's court and consented that the will be admitted to probate, and that an inventory of the property left by the decedent be made on the following day, July 29, 1898. On the probate of the will there were present, among others, in addition to the widow and the two daughters, Edward K. Mersereau, the executor named in the will, E. C. Moody, Esq., the attorney for the executor, and Alex Cumming, Esq., the attorney who drew the will. Some question arose that day as to what was meant by certain expressions contained in the will; they were then and there explained to the apparent satisfaction of both the widow and the two daughters. On July 29, 1898, an inventory of the property was made at the home of the executor, Edward K. Mersereau, in the village of Union, Broome county, N. Y. All of the parties just above mentioned were present. At that time there was a further discussion as

to what was meant by the term "statutory allowances" and as to what portion of the property was to go to the widow, and the general construction placed upon the will at that time was that the personal property was to be equally divided between the three, and that there should be set off to the widow as exempt the sum of $150. On that day the sum of $150 was set off to the widow in the schedule and inventory as exempt, and cash, securities, and other personal property, amounting to about $13,884, were divided or agreed to be divided equally between the widow and each of the two daughters, and conveyances were made to each of them by the executor. Subsequently, and on several different occasions extending over a considerable length of time, other divisions of the personal property of the decedent were made by and between the widow and the two daughters. The total amount of the personal property thus divided between the widow and the two daughters, including the inheritance tax, amounted in the aggregate to $26,250, each receiving $8,750. On May 28, 1900, a petition for the final settlement of the estate, together with the executor's account, was duly filed by the executor with the surrogate, after which all of the interested parties herein appeared in surrogate's court and the only objection raised to the account was over a small charge made by E. C. Moody, Esq., the attorney for the executor, for attending the appraisal of the estate at Union on July 29, 1898. This matter was amicably adjusted at the time, and all of the parties thereto expressed themselves as satisfied therewith. It appeared, however, at that time that the estate owned two judgments of questionable value and a land contract covering certain land in Sullivan county, N. Y., and that as this particular property had not been disposed of it was agreed between the parties to the accounting that the account should not be closed at that time, but should be held open until all of the property was disposed of; thereupon the parties interested herein gave Edward K. Mersereau, the executor under the will, a power of attorney authorizing him to make such disposition of the two judgments and of the land contract as he should deem advisable; and the final accounting was then, and thereafter from time to time, adjourned pending the disposition by Edward K. Mersereau of the judgments and the land contract heretofore mentioned. After repeated adjournments of the accounting, and on January 26, 1901, Angeline Barney and Ermina Olmsted, the two daughters of the said Jesse Woughter, and devisees and legatees under his will, filed objections to the account of the said Edward K. Mersereau, the executor herein, alleging:

"That the said account is erroneous, faulty, and at variance with the spirit, letter, and intent of the will, and is at variance with the intention of the testator as expressed in and by said will. That, by the first item or subdivision of the will of said deceased, said testator, after providing for the payment of his debts, did give and bequeath to his wife, Jennie Woughter, two certain pieces or parcels of real estate; and did also in said first item or subdivision of his said will, after more minutely and specifically describing said real estate so given to his said wife, provide as follows, to wit: 'This devise is to be in lieu of dower in any of my real estate and also of all statutory allowances.' That notwithstanding the widow of said deceased accepted the provisions made by her by the terms of said will, namely, the real estate in said first item or subdivision devised to her in lieu of dower and all

statutory provisions or allowances, it appears from his account that said executor has disregarded the terms and conditions of said will of said deceased as made for and accepted by the widow of said deceased, and distributed the personal estate left by deceased as if no will had been made."

Wherefore the contestants ask that the account filed by the executor be rejected and disallowed in so far as it credits said executor with the sum of $8,692.09, which said sum the said executor claims to have paid the widow of said deceased, and further asks that an order be made adjudging the said sum of $8,692.09 to be in the hands of the executor for distribution. To these objections separate answers were filed on March 8, 1901, by both Jennie Woughter Courtright, the widow, and Edward K. Mersereau, the executor. The answers, in brief, admit the allegations contained in the second paragraph of the objections and deny each and every other allegation contained in the objections. The answers also recite that the provisions of the will were discussed by all the parties interested therein both at the time the will was offered for and admitted to probate, and on subsequent occasions therein specified; and that the construction placed upon the will by all of the parties interested therein, among other things, gave the personal property of the testator to his widow and to each of his two daughters, share and share alike; and that pursuant to that construction the personal property has been equally divided between the widow and each of the two daughters; and that at the time the final account was filed with the surrogate all of the parties interested therein approved of the said account and agreed that the same was correct; and that, the property having been divided in accordance with the construction placed upon the will by the parties interested therein, the contestants herein are now estopped and barred from contesting said account or disputing the construction of the said will, and that they are bound by their own acts, consents, and agreements made and acted upon in relation to the distribution of the estate of said deceased. The testator, after providing for the payment of his lawful debts, devised to his wife, Jennie Woughter (now Jennie Woughter Courtright), two specific parcels of real estate. Immediately following that provision in the will are these words: "This devise is to be in lieu of dower in any of my real estate, and also of all statutory allowances." Then follows the second and last provision of the will, which reads as follows: "It is my wish and will that the balance of my property, both real and personal, shall vest in the persons entitled thereto under and by the laws of the state of New York." The widow elected to take under the will.

The contestants contend that by the above provisions she is precluded from taking any part of the personal property specified in the second provision of the will. No question arises over that part of the provision above mentioned which reads: "This devise is to be in lieu of dower in any of my real estate,"—as all of the parties interested herein are agreed that such provision, upon the acceptance of the same by the widow, effectually cut off any interest which she as widow had in the real estate of the testator at the time of his death; but the first question presented to the court for its consideration is: What is meant by the expression, "and also of all statutory allowances?"

This question naturally leads us to inquire what provisions are made by the statutes of the state of New York for the benefit of a widow. While the expression "statutory allowances" is not to be found in any of the provisions which I am about to cite, yet our law does make several provisions for the widow of a deceased husband, all of which are of statutory origin.

First. There is dower. The law provides that:

"A widow shall be endowed of the third part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage." Birdseye, Rev. St. (3d Ed.) 3042, § 170.

Second. The widow's quarantine. The law provides that:

"A widow may remain in the chief house of her husband forty days after his death, whether her dower is sooner assigned to her or not, without being liable to any rent for the same; and in the meantime she may have her reasonable sustenance out of the estate of her husband." Id. 3045, § 184.

Third. The exemptions specified in section 2713 of the Code of Civil Procedure. The section last above cited, among other things, provides as follows:

"If a man having a family die, leaving a widow or minor child or children, the following articles shall not be deemed assets, but must be included and stated in the inventory of the estate without being appraised [enumerating many articles and various kinds of personal property]. If there be a widow and no minor child all the articles and property in this section mentioned shall belong to the widow."

Fourth. A distributive share in his personal property. Section 2732 of the Code of Civil Procedure, among other things, provides as follows:

"If the deceased died intestate, the surplus of his personal property after the payment of debts; and if he left a will, such surplus, after the payment of debts and legacies, if not bequeathed, must be distributed to his widow, children, or next of kin, in manner following: One-third part to the widow, and the residue in equal portions among the children, and such persons as legally represent the children if any of them have died before the deceased."

Which of these provisions, if any, are included in the expression, "and also of all statutory allowances"?

Strictly speaking, dower is not included in the expression "statutory allowances." Dower is something more than an allowance. It is an estate in real property, which vests in the widow immediately upon the death of her husband, and where the relationship of husband and wife exists it cannot be taken from her without her consent. In other words, it is an estate of which she cannot be deprived except by due course of law. Both the widow's quarantine and the exemptions specified in section 2713 of the Code of Civil Procedure are provisions which inure to the benefit of the widow whether her husband dies testate or intestate, unless, in a case where he dies testate, some provision is made to cut off or bar that which the law has created expressly for her benefit, and she has elected to accept the same in lieu of the provisions made for her by statute. In other words, the law having due regard for, and being solicitous of the welfare of, the widow, has provided for her benefit both the widow's quarantine and the exemptions hereinbefore specified. Her right to them

is absolute, and she cannot be deprived of either of them without her consent.

As to the widow's exemptions, see Vedder v. Saxton, 46 Barb. 188; Sheldon v. Bliss, 8 N. Y. 31; Fox v. Burns, 12 Barb. 677; In re Shedd's Estate (Sur.) 11 N. Y. Supp. 788; Hatch v. Bassett, 52 N. Y. 359. In the case of Fox v. Burns, 12 Barb. 679, the court, in speaking of the widow's exemptions, said:

"The title of the widow, where there is no minor child, is absolute on the death of her husband, subject to the right of the executor or administrator to take possession of the property for the purpose of inventorying it."

This statutory provision (Code Civ. Proc. § 2713) in favor of the widow holds good and must be respected though the husband by his will makes other provisions for her, which are not specified to be in lieu of her exemptions, and even though he dispose of all of his personal property. In re Frazer, 92 N. Y. 239, 246; Hatch v. Bassett, 52 N. Y. 359, 362; Sheldon v. Bliss, 8 N. Y. 31, 35; In re Tobin (Sur.) 16 N. Y. Supp. 462; Vedder v. Saxton, 46 Barb. 188; Shipman v. Keys, 127 Ind. 353, 26 N. E. 896; In re Harris' Estate (Sur.) 20 N. Y. Supp. 68. The court, in speaking of the widow's exemptions, in the latter case said:

"It has been held that this class of property forms no part of the estate as a subject of bequest. The testator could no more devest his widow of it by will than he could her dower in real estate."

Neither the widow's quarantine nor these exemptions come to the widow by way of descent or distribution. They are provisions having for their primary object the temporary relief of a widow, and, strictly speaking, I believe they may be termed "statutory allowances." While the courts of this state have not made extensive use of the words "statutory allowances," yet that expression is a most common one, and is the one generally used when speaking of provisions for the benefit of a widow similar to those specified in section 2713 of the Code of Civil Procedure. In the case of Vedder v. Saxton, 46 Barb. 188, 194, Parker, P. J., in speaking of the exemptions now incorporated in section 2713 of the Code of Civil Procedure, said:

"The position of the plaintiff's counsel that the widow, by accepting the provision of the will in her favor, has renounced and cannot now claim the statutory allowance, is answered by the cases already cited and what has been said in regard to them. There is no incongruity in her holding both what the law and the will respectfully give her."

In volume 2 of the American and English Encyclopedia of Law (2d Ed.) at page 156, under the heading of "Allowances," we find the following expressions:

"Most of the states in the Union have provided by statute for the temporary maintenance of the widow and family of a decedent out of his estate until they receive their distributive shares, or until some other provision can be made for their support. This is known as the widow's allowance. This allowance is of purely statutory origin, no provision whatever being made by common law for supplying the wants or administering to the necessities of the widow and children immediately after the death of the head of the family."

And on page 157, under the heading "Beneficiaries," the author says:

"The statutes differ in terms used to designate the beneficiaries of the statutory allowance."

And at page 167 the author says:

"In some cases it is held that the widow is entitled to a statutory allowance in addition to any bequest or other provision made for her by her husband's will unless the intent to bar the widow of her allowance clearly appears from some provision in the will."

Thus it will be seen that the expression "statutory allowances" has a more restricted meaning than is given to it by the contestants herein. It has never, to my knowledge, been made to include the statute of distribution.

We will now consider the question: Is the widow entitled, under this will, to one-third of the personal estate? One of the chief principles to be borne in mind, in a case of this character, is that "effect must be given to the will, and to all its provisions, according to the intent of the testator as declared by him, and the intent must be gathered from the language employed. The intention of the testator is to be sought after and carried into effect, and such intention is to be collected from the will itself regarding the words as used in their ordinary sense." Chamberlain v. Chamberlain, 43 N. Y. 424, 443; Byrnes v. Stilwell, 103 N. Y. 453, 458, 9 N. E. 241, 57 Am. Rep. 760; Miller v. Gilbert, 144 N. Y. 68, 73, 38 N. E. 979; Thomas, Estate, 1645. Having above considered the provision in the will which reads: "This devise is to be in lieu of dower in any of my real estate and also of all statutory allowances," we come to the second or last provision of the will, which reads: "It is my wish and will that the balance of my property both real and personal shall vest in the persons entitled thereto under and by the laws of the state of New York." After having placed upon the provision, "and also of all statutory allowances," the construction hereinbefore given, the question now under consideration is easier of determination. In this particular case, if Jesse Woughter had died intestate, after setting off the exemptions provided by law and paying the debts which were a charge against his estate, the balance of the personal property would have been divided in the manner following: One-third part thereof to the widow, and the remaining two-thirds would have been divided equally between the two daughters. Code Civ. Proc. § 2732. The counsel for the contestants calls the attention of the court to the fact that the widow is not a "next of kin or heir at law." I believe the contention of the counsel is correct, but it will be noted in that part of the will now under consideration the testator speaks as follows: "Shall vest in the persons entitled thereto under and by the laws of the state of New York." He does not use the expression "heir at law" or "next of kin," but he uses the word "persons," thus showing that it was not his intention to exclude his widow from sharing in the personal property in the manner and to the extent provided by the statute of distribution. The provisions of the will when carefully considered, in connection with the authorities bearing on the same, sat-

isfy me that the widow, under the will, is entitled to one-third of the personal property; but let us briefly consider the facts adduced before the surrogate. The evidence shows that the total value of the real estate owned by the testator at the time of his death was $3,900, and that the total value of his personal property as shown by the inventory was $29,319.30; that the value of the real estate devised to the widow, Jennie Woughter (Courtright), was $1,000, an amount which probably exceeds her dower interest in the estate, yet the amount thereof as compared with the total value of the property left by the decedent is small, being about $1/34$ part thereof. This would seem like an inequitable division of the property, and would be contrary to the intention of the testator, as the same is evidenced not only by the will but by the testimony of Alex Cumming. The undisputed evidence shows that Alex Cumming had been the attorney for Jesse Woughter, the decedent, for many years; that he drew the will in question and was familiar with all its provisions; that he was present both at the time the will was offered for and admitted to probate and on the day the inventory was made at Union, N. Y.; that on both of the occasions last above mentioned Mr. Cumming, in response to questions put to him as to what was meant by the expression "and also of all statutory allowances," and as to how much property passed under the will to the widow, said that the former expression referred to the widow's exemptions, or the property set apart for the widow in the inventory, and that the widow was, under the terms of the will, entitled to one-third of the personal property. No one was in better position to know the intention and purpose of the testator than the man who had been his legal adviser for many years and who drew the will in question.

While it is not necessary for the determination of the issues now before the court, yet, in giving full construction to the will a single question remains to be considered, and that is: Was the widow, under the will, entitled to the sum of $150, which was set apart to her in the inventory, under subdivision 5 of section 2713 of the Code of Civil Procedure? While it is true that, under the section of the Code last above referred to, the title of the widow to the property therein specified to be exempt, where there is no minor child, is absolute on the death of her husband, subject only to the right of the administrator or executor to take possession of the property for the purpose of including and stating it in the inventory, yet a husband may make a provision for his widow, in his will, which he shall declare to be in lieu of all the provisions made for her by statute, and in the event of her accepting the provision thus made for her in the will she waives her right to the provisions thus made for her by law. By the terms of the will now under consideration the testator expressly declared, among other things, that the devise to the widow should be in lieu of all statutory allowances, and the widow, having accepted the devise, is not entitled to any of the exemptions specified in section 2713 of the Code of Civil Procedure. In other words, the widow is put to an election where it appears that a provision has been made for her which is expressly declared to be in lieu of a statutory right. In re Young's Estate, 27 Hun, 54, 56, 57, affirmed in Young v. Hicks, 92 N. Y. 235,

239; Chamberlain v. Chamberlain, 43 N. Y. 424, 445–447; In re Benson, 96 N. Y. 499, 505–508, 48 Am. Rep. 646; Hurley v. McIver, 119 Ind. 53, 21 N. E. 325; Shipman v. Keys, 127 Ind. 353, 26 N. E. 896. In the latter case (page 356, 127 Ind., and page 896, 26 N. E.) the court said:

"When it clearly appears from the will, either by express statement or otherwise, that the provision therein made for the wife is intended to be in lieu of that made by the law, she must elect between the will and the law, and cannot have the provision made by both."

In Shafer v. Shafer, 129 Ind. 394, 395, 396, 28 N. E. 867, the court said:

"It is true that a testator cannot dispose of the property which the law gives the widow by his will without her consent, yet the principle that she may waive the provision made by law, and take in lieu of it a provision made by the will of her husband, is too well settled to require the citation of authority."

In Chamberlain v. Chamberlain, 43 N. Y. 424, the widow elected to accept the provisions made for her in the will, which were to be in lieu of any other share or interest in the estate. At pages 442 and 443 the court said:

"By accepting this provision, she assents to all the terms and conditions annexed to it, and yields every right inconsistent with such terms and conditions. He who accepts of a devise or bequest does so on condition of conforming to the will, and a court of equity will compel him to perform the condition. No one is allowed to disappoint a will under which he takes a benefit."

In Re Benson, 96 N. Y. 507, the court said:

"If in this case the widow had, prior to her marriage, entered into an antenuptial agreement with her husband by which, in consideration of the provisions then made for her, she had consented to take and claim no more in his real or personal estate, it is conceded that such contract would have bound her and, after the death of her husband, barred her from any further share or interest in his estate. By accepting the provisions made for her in the will, in lieu of all her rights as widow in the estate of her husband, she assented to all the terms and conditions annexed to the provisions, and becomes bound by them just as if she had covenanted to observe them, and her assent can be enforced in equity just as if she had come under a convention or contract. We can perceive no reason for enforcing such a covenant, made before the marriage, that does not exist for enforcing the assent, the legal equivalent of a covenant, given after the dissolution of the marriage by death."

For the reasons herein set forth the objections are dismissed, with costs against the contestants. It is not necessary to and the court has not passed upon the other questions herein presented.

Objections dismissed, with costs against contestants.