MARY MURRAY, as Administratrix, etc., Appellant, *v.* ARTHUR
G. Fox et al., Respondents.

SAME, Appellant, *v.* SAME, Respondents.

F. & W., who were copartners, executed two mortgages, one to secure a
bond executed by F., the other a bond executed by both. Each of the
bonds was given for partnership indebtedness. The mortgages covered
certain lands owned by F. & W. jointly, also lands owned by F. alone.
F. & W. subsequently conveyed the mortgaged lands owned by them, by
full covenant deed, for a price that covered the full value of the unin-
cumbered fee. F. died, and thereafter plaintiff, the administratrix
of the mortgagee, negotiated a settlement of various claims the estate held
against W., and plaintiff executed to W. a release and discharge, among
other things, of all several and joint liability on account of the bonds
and mortgages, which release recited that it was not intended "to
affect or discharge the liability" of F., "or intended to affect any other
security for any of said demands other than the personal liability of"
W. In an action to foreclose the mortgages, *held*, that the release
discharged the party primarily liable for the mortgage debt, and so cut·
off and destroyed the equitable right of subrogation belonging to the
surety in case of payment, and, therefore, that the lien of the mortgages
upon the lands bound as security were discharged.

Prior to the execution of the release by plaintiff, W. compromised with
the said grantee of a portion of the mortgaged premises certain claims,
held by it, and received a release of himself and the heirs of F. upon the
covenants in the deed, and from all existing debts, matured and unma-
tured, with a covenant that the releasor had not parted with or impaired
its title "to any such debts." *Held*, that the release of the covenants
in the deed did not *ipso facto* discharge the equities which might arise
in favor of the covenantee against the covenantor, or make the land
principal debtor for the mortgage; but that it remained chargeable
only as surety, and the right of subrogation remained, which was cut
off by plaintiff's release.

(Argued January 20, 1887; decided March 1, 1887.)

APPEALS from two judgments of the General Term of the
Supreme Court in the fifth judicial department, entered upon
orders made January 23, 1886, which affirmed judgments in
favor of plaintiff, each entered upon decisions of the court
on trial without a jury. (Reported below, 39 Hun, 108.)

These actions were brought by plaintiff as administratrix of
the estate of Hugh Murray, deceased, to foreclose mortgages,

both executed by Arthur W. Fox and Horace Williams to said Murray, formerly copartners, upon certain pieces of real estate in Buffalo, a portion of which were owned by the mortgagors jointly and a portion by Fox alone. One of said mortgages was given to secure the payment of a bond executed by Fox alone, the others to secure the joint and several bond of the mortgagors. Both bonds were given to secure indebtedness of the copartnership.

The further material facts are stated in the opinion.

*Ansley Wilcox* for appellant. When, by an agreement between the principal debtor and the creditor, the remedy of the creditor is reserved against the surety, the situation of the surety is not changed and he is not discharged. (*Morgan* v. *Smith*, 70 N. Y. 545, 546; *Matthews* v. *Chicopee M'fg. Co.*, 3 Robt. 713; *Calvo* v. *Davies*, 73 N. Y. 217; *Hubbell* v. *Carpenter*, 5 id. 171; *Price* v. *Barker*, 4 Ellis & Bl. 760; *Boaler* v. *Mayer*, 10 C. B. N. S. 76; 8 Jacob's Fisher's Dig. 12894; *Wagman* v. *Hoag*, 14 Barb. 239; *Couch* v. *Mills*, 21 Wend. 424.) A release may expressly extend only to the party released, with the express reservation of rights against other parties, in which case it will be construed only as a covenant not to sue. (1 Pars. on Con. 28; 2 id. 715; Chitty on Con. 863; 2 id. [11 Am. ed.] 1155; *Parmelee* v. *Lawrence*, 44 Ill. 405; Brandt on Suretyship, § 123; 7 Jacob's Fisher's Dig. 11564; *Couch* v. *Mills, supra; Morgan* v. *Smith*, 70 N. Y. 545; *Calvo* v. *Davies*, 73 id. 217; *Conn. Fire Ins. Co.* v. *Erie R. Co.*, id. 399; *Tripp* v. *Vincent*, 3 Barb. Ch. 613; *Bentley* v. *Vanderheyden*, 35 N. Y. 680; *Johnson* v. *Zink*, 51 id. 333; Story Eq. Jur., § 1231, *c.*) The conveyance by warranty deed containing full covenants (covenants against incumbrance, included), of said mortgaged premises, gave the sugar company an immediate right of action for the breach of those covenants. (Rawle on Cov. [4th ed.] 355; *Braman* v. *Bingham*, 26 N. Y. 495; *Hall* v. *Dean*, 13 Johns. 105; *Browne* v. *Lynde*, 91 N. Y. 92; *Johnson* v. *Zink*, 51 id. 333; *Flower* v. *Lance*, 59 id. 608; *Cherry* v. *Monro*, 5

Barb. Ch. 619; *Tripp* v. *Vincent, supra; Curtis* v. *Tyler,* 9 Paige, 432, 445; *Russell* v. *Pistor,* 7 N. Y. 171; Story's Eq. Jur., §§ 499, 502, 638; *Moore* v. *Paine,* 12 Wend. 126; *Vail* v. *Foster,* 4 N. Y. 312; *Nat. Bk.* v. *Bigler,* 18 Hun, 400, *Crosby* v. *Crafts,* 5 id. 327; *Pratt* v. *Adams,* 7 Paige, 627; *Wadsworth* v. *Lyon,* 93 N. Y. 201–208.) Where a grantee, like the Grape Sugar Company in the present case, for a valuable consideration, releases the express covenants, which gave it a remedy over against its grantor in case of a foreclosure of the mortgage, there can be left no implied right of subrogation or implied right to recover against the grantor. (*Vanderkarr* v. *Vanderkarr,* 11 Johns. 122; *Kent* v. *Welch,* 7 id. 259; *Frost* v. *Raymond,* 2 Caines, 188.) The plaintiff produces the bond and mortgage in suit, which is *prima facie* evidence that they have not been paid, and the burden of proof is upon the defendants to establish payment by a preponderance of evidence. (*Ritter* v. *Schenk,* 101 Ill. 387; 2 Greenl. on Ev., § 516; 3 id. § 29; *Powers* v. *Russel,* 13 Pick. 76; *Delano* v. *Bartlett,* 6 Cush. 366; *Stearns* v. *Fields,* 90 N. Y. 640; *Heilman* v. *Lazarus,* id. 673.) No presumption from lapse of time of the payment of a mortgage can arise under our statute within twenty-four years after the mortgage becomes due. (4 R. S. [7th ed.], § 381; *Ingraham* v. *Baldwin,* 9 N. Y. 45; *Daly* v. *Ericsson,* 45 id. 786.) An administrator cannot create a debt against the deceased, and it is immaterial how clearly the intent to do so may be expressed, for, having no power to bind the estate, he only binds himself by such a contract. (*Sumner* v. *Williams,* 8 Mass. 199; *Myer* v. *Cole,* 12 Johns. 349; *Barry* v. *Bush,* 1 T. R. 691.) This agreement not being signed by the plaintiff, but by her attorney in fact, is void. The plaintiff could not delegate the power to make it. (2 Williams' Ex'rs, 1011, 1018; Dayton on Surrogates [1861], 310; *Neal* v. *Patten,* 47 Ga. 73; 1 Sugden on Powers [3d Am. ed.], 214; *Newton* v. *Bronson,* 13 N. Y. 587; *Berger* v. *Duff,* 4 Johns. Ch. 367.) To entitle a third person to the benefit there must be either a new consideration or some prior right or claim

against one of the contracting parties, by which he has a legal interest in the performance thereof. (*Vrooman* v. *Turner*, 69 N. Y. 280; *Garnsey* v. *Rogers*, 47 id. 233; *Turk* v. *Ridge*, 41 id. 201; *Merrill* v. *Green*, 55 id. 270.)

*Adelbert Moot* for respondents. The evidence of defendants established payment of the mortgages. (*Wise* v. *Fire Ins. Co.*, 4 East. Rep. 51; *Ferry Co.* v. *Moore*, 102 N. Y. 667; *De Forest* v. *Bloomingdale*, 5 Denio, 304; *Sherman* v. *McIntyre*, 7 Hun, 593; *Lake* v. *Lysen*, 6 N. Y. 461.) The release and discharge to Williams under seal is conclusive evidence of the payment of the firm debt. (*Ryan* v. *Ward*, 48 N. Y. 204; *Harrison* v. *Close*, 2 Johns. 448; *Stearns* v. *Tappan*, 5 Duer. 294; *Eighmie* v. *Taylor*, 98 N. Y. 288; *Lyon* v. *Hersey*, 7 East. Rep. 490.) The facts proved and found show an accord and satisfaction. (*McDaniels* v. *Lapham*, 21 Ver. 223, 234; *Lamb* v. *Goodwin*, 10 Ire. 320, 323; *Donahue* v. *Woodbury*, 6 Cush. 150; *Feeter* v. *Weber*, 78 N. Y. 334; *Dunham* v. *Griswold*, 100 id. 224.) When one of two persons, who gives a joint and several bond, and secures the payment of the bond by a mortgage on his individual property, the individual property mortgaged is *prima facie*, a surety for the payment of the bond, and the owner of the land is entitled to all the rights which protect a surety in any other case. (*Grow* v. *Garlock*, 97 N. Y. 86; *Colgrove* v. *Tallman*, 67 id. 95; *Calvo* v. *Davies*, 75 id. 211; *Palmer* v. *Purdy*, 83 id. 144; *Murray* v. *Marshall*, 94 id. 614; *Ayers* v. *Dixon*, 78 id. 323, 324.) If the property of these two classes of defendants was bound as a surety only, then, upon the payment of the mortgage debt, either one so paying is entitled, in equity, to be subrogated to the mortgage debt with all the securities and means which the mortgage creditor has for enforcing it. (*Fairchild* v. *Lynch*, 99 N. Y. 364; *Wadsworth* v. *Lyon*, 93 id. 201; *Ayers* v. *Dixon*, 78 id. 323, 324; *Murray* v. *Marshall*, 94 id. 614, 616; *Grow* v. *Garlock*, 97 id. 81.) Whenever the relation of surety exists, the creditor owes a duty to the surety, not always

an active duty, but a duty to leave the time and manner of payment unchanged; a duty to keep intact all obligations against the principal; and plaintiff having disregarded this duty, defendants are discharged. (*Kane* v. *Cortesy*, 100 N. Y. 132.) Williams, the survivor and principal debtor, was discharged by the plaintiff. As to the bond made out in the name of Arthur W. Fox alone, his representatives cannot be sued, it being for a firm debt, until the legal remedy against Williams, the survivor of the firm, had been exhausted. (3 Pomeroy's Juris., § 1301; *Parker* v. *Jackson*, 16 Barb. 44; *Moorehouse* v. *Ballou*, id. 289; *Haines* v. *Hollister*, 64 id. 1; *Hunt* v. *Amidon*, 4 Hill, 345, 348; *Merritt* v. *Bartholick*, 36 N. Y. 44; *Bennett* v. *Austin*, 81 id. 321; *Voorhis* v. *Childs*, 17 id. 356; *Richter* v. *Poppenhausen*, 52 id. 373.) Williams, the survivor, was the principal debtor at law and in equity, and, as such, primarily charged with the debts of the firm, and absolutely vested with the legal title to its assets, wherewith to discharge those debts. (*Roeschick* v. *Hatfield*, 51 N. Y. 660; *Nerboss* v. *Bliss*, 88 id. 600; *Stearns* v. *Tapping*, 5 Duer. 294; 1 Pomeroy's Eq. Jur., § 383.) Unless the contrary clearly appears from the instrument itself, or the surrounding circumstance, a release or discharge under seal of a principal is also a release and discharge to the sureties, even though it formally contain a reservation over of rights against sureties or securities. (*Lyon* v. *Hersey*, 7 East. Rep. 490; *Aloff* v. *Scrimshaw*, 2 Salk. 574; 1 Chitty on Cont. [11th Am. ed.] 575, 774; Brandt on Suretyship and Guaranty, 173, § 122; *Brown* v. *Williams*, 4 Wend. 365; *Phelps* v. *Johnson*, 8 Johns. 54; *Matthews* v. *Chicopee M'f'g Co.*, 3 Rob. 713; *Clark* v. *Bush*, 3 Cow. 151; *Cuyler* v. *Cuyler*, 2 Johns. 185; *Phelps* v. *Johnson*, 8 id. 54; *Harrison* v. *Close*, 2 id. 448; *Rowley* v. *Stoddard*, 7 id. 207; *Catskill Bk.* v. *Messenger*, 9 Cow. 37; *Chenango Bk.* v. *Osgood*, 4 Wend. 607; *Couch* v. *Mills*, 21 id. 424; *Hosack* v. *Rogers*, 8 Paige, 229; *Seymour* v. *Minturn*, 17 Johns. 169; *Bronson* v. *Fitzhugh*, 1 Hill, 185; 2 Chitty on Cont. 1154; *Price* v. *Barker*, 4 El. & Bl. 760.)

Neither defendant could be subrogated to the debt as against Williams, after his discharge. He was good, and the right of action against him on the bond was a perfect security for the whole debt at the time he was discharged. (3 Pomeroy's Eq. Jur., §§ 1210, 1214, 1419; *Grow* v. *Garlock*, 97 N. Y. 81; *Murray* v. *Marshall*, 94 id. 616; *Dutcher* v. *Rapp*, 67 id. 464; 1 Story's Eq. Jur., § 325; *Hoyt* v. *Ward*, 4 Johns. Ch. 123; *Bangs* v. *Strong*, 10 Paige, 11; *Calvo* v. *Davies*, 73 N. Y. 215; *Palmer* v. *Purdy*, 83 id. 147.) The plaintiffs are in error in contending that section 1942 of the Code does not apply to this release. (*Richter* v. *Poppenhausen*, 42 N. Y. 373; *Cole* v. *Pope*, 55 id. 124; *Rixley* v. *Brown*, 67 id. 160; *Hauck* v. *Craighead*, id. 432; 1 Pomeroy's Eq. Jur., § 409; *Randall* v. *Sackett*, 77 N. Y. 480; *Candee* v. *Smith*, 93 id. 349.) As this is an equity action the court will not reverse the judgment if it can be sustained upon competent proof upon any point fatal to plaintiff's recovery. (*Church* v. *Kid*, 3 Hun, 259; *Marvin* v. *Marvin*, 11 Abb. [N. S.] 102; 4 Keyes, 9; *King* v. *Whaley*, 59 Barb. 71; *Apthorp* v. *Comstock*, 2 Paige, 482; *In re N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 346, 347.)

*John G. Milburn* for respondents. The indebtedness secured by the bond and mortgage being the indebtedness of the firm of A. W. Fox, Williams, as one of the partners in the firm, was liable as such; and on the death of Fox, in 1874, Williams, as the survivor, was primarily liable. (*Voorhees* v. *Child's Ex'rs*, 17 N. 354; *Richter* v. *Poppenhausen*, 42 id. 373; *Pope* v. *Cole*, 55 id. 124.) The position of the Grape Sugar Company, as grantee of the mortgaged premises, was that of a surety with respect to this mortgage debt. (*Wadsworth* v. *Lyon*, 93 N. Y. 201, 208, 214; *Barnes* v. *Mott*, 64 id. 397; *Murray* v. *Marshall*, 94 id. 353; *Cole* v. *Malcolm*, 66 id. 363; *Colegrove* v. *Tallman*, 67 id. 95, 97, 98; *Ellsworth* v. *Lockwood*, 42 id. 89, 97, 98; *Henckley* v. *Kreitz*, 58 id. 591; *Lewis* v. *Palmer*, 28 id. 271; *Matthews* v. *Aiken*, 1 id. 595.) The release, by the plaintiff, of the

obligor, Williams, from all liability on this bond, exonerated the lands conveyed to the Grape Sugar Company from the lien of the mortgage. (*Barnes* v. *Mott*, 64 N. Y. 397; *Chester* v. *Bk of Kingston*, 16 id. 336; *Henckley* v. *Kreitz*, 58 id. 583; *Grow* v. *Garlock*, 97 id. 81; *Cheesebrough* v. *Millard*, 1 Johns. Ch. 409; *Polak* v. *Everett*, L. R. [1 Q. B. D.] 669; *Mayhew* v. *Crickett*, 2 Swanst. R. 185; *Bangs* v. *Strong*, 10 Paige, 11; *Bateson* v. *Gosling*, L. R. [7 C. P.] 9; *Lysaght* v. *Duer*, 5 Duer, 106.) The release given in 1881, by the Buffalo Grape Sugar Company, to Williams and the estate of Fox, from all liability on the covenants contained in its deed, does not change the relation of the parties or the consequences of the release given by the plaintiff to Williams. (*Van Rensselaer* v. *Kearney*, 11 How. [U. S.] 631; *Wadsworth* v. *Lyon*, 93 N. Y. 208.) The payment of the bond and mortgage was established and the finding of the court to that effect is well sustained. (Code of Civ. Pro., § 1337; *Haight* v. *Williams*, 46 N. Y. 683; *Stilwell* v. *Ins. Co.*, 72 id. 385.) The plaintiff's breach of the agreement of April 29, 1881, exonerated the lands of the Grape Sugar Company from the lien of the mortgage in suit. (Pomeroy's Eq. Jur., §§ 3, 64.) It was competent and proper to show that this agreement was made on behalf of the Grape Sugar Company. (*Coleman* v. *Bank*, 53 N. Y. 388.)

FINCH, J. The most important question in these cases grows out of the release executed by the plaintiff, which purports to discharge the party primarily liable for the mortgage debt from all responsibility for its payment. The bond in the first action was executed by Arthur W. Fox, and secured by the mortgage of Fox & Williams. The bond in the second action was executed by both and secured in like manner. The mortgages incumbered parcels of land which had been conveyed by Fox & Williams to the Grape Sugar Company by a full covenant deed, and for a price which covered the full value of the unincumbered fee; a fact which the trial court found upon sufficient evidence, and

which is inferable from the character of the conveyance and the scope of the covenants contained in it. Fox & Williams were partners when the bonds were given; doing business at first in the name of Arthur W. Fox and later in that of Arthur W. Fox & Company; and each of the bonds was given for and represented an indebtedness of the partnership. That fact is also found by the trial court upon evidence quite sufficient to sustain it. The mortgages covered other lands of Fox in addition to that conveyed to the Grape Sugar Company, which, upon the death of Fox, descended to his heirs, who were named among the parties defendant in the foreclosure actions. Williams, as survivor of the firm, in possession of its assets and liable for its debts, was thus left a primary debtor for the bonds in suit. An action upon two notes of the firm was brought in another State where he chanced to be, and resulted in negotiations for a settlement of his liability, which culminated in the payment by him to the administratrix of the mortgagee of $13,500 upon an agreement of release and discharge, put in writing and formally executed, the construction of which is to be ascertained and determined.

That instrument recites the two bonds and mortgages now sought to be enforced; the execution by Fox and Williams of two other collateral mortgages; the delivery of two notes of the firm to the plaintiff's intestate, one for $6,500, and one for $610; the existence of other dealings between the parties; and the willingness of the administratrix to release Williams without discharging any other party or liability; and then provides that Williams is discharged and released from " all several liability on account of said bond, mortgages, notes, and all other doings whatsoever," and from " all joint liability on account of said bond, mortgages, notes, and other dealings and demands in connection with said firms," and concludes thus: " But not ,intending hereby to affect or discharge the liability of said Arthur W. Fox or his estate therefrom, or affect or discharge any other security for any of said demands other than the personal liability of said Williams." Previous

to the execution of this release the Grape Sugar Company had discharged the Fox estate and Williams from all liability on their covenants of warranty; and assuming, what is denied and must later be considered, that the corporation stood in the attitude of a grantee buying for a full consideration, but without covenants, land incumbered by a mortgage, and so entitled on payment of the mortgage debt to enforce the bond against the mortgagor (*Wadsworth* v. *Lyon*, 93 N. Y. 201, 208), it follows that the release of Williams, by plaintiff, cut off and destroyed the equitable right of subrogation belonging to the surety, unless the latter right is saved by the reservation. It is undoubtedly true that one of several debtors, jointly, or jointly and severally, liable for the same debt, may be released in such manner and with such reservation as will preserve the right of recourse against the others, even though sureties, when their rights and equities can be said to have been also preserved and left unaffected, the release becoming a mere covenant not to sue. It is strenuously insisted that such a rule of construction cannot possibly apply to the release of a sole debtor, not jointly liable at the time with any one, and that a covenant not to sue him must necessarily discharge and release the debt. (*Brown* v. *Williams*, 4 Wend. 360, 365.) But there is room for debate as to whether the liability of Williams, originally joint with Fox, has become in all respects sole and several within the meaning of the authority cited, and we prefer to proceed with the inquiry as to the construction of the reservation. If, by its terms, the equity of the Grape Sugar Company to pay the debt in exoneration of its land, and then recover that amount from Williams, is preserved, then the release did not affect the surety and left its liability unchanged. However astonishing such a result would be upon the facts proven in the case, and however difficult it may be to believe that Williams meant and intended to pay $13,500 for a mere covenant not to be sued by Murray, leaving himself liable for the full mortgage debt to the Grape Sugar Company, and so paying that large amount for a mere choice of plaintiffs, that must be the

effect of the reservation unless something in it indicates a
different intent and admits of a construction more in accord
with the obvious purpose and understanding of the parties.
There are such expressions. The release discharges "all
liability" "on account of" such mortgages. Not merely
*some* liability, as, for example, that to a specific person, but
"*all*" liability "on account of" the mortgages, evidently mean-
ing every possible liability of Williams which could in any
manner or at anybody's suit spring from the existence of the
securities. And this meaning is sedulously preserved and
carefully guarded in the peculiar phraseology of the reser-
vation. As we read it, that reservation of the right to enforce
other securities is not absolute and unconditional, and so
inconsistent with what precedes it, but is limited and
restrained precisely as we should expect to find it, having in
view the situation and expressed purpose of the parties.
The intent is declared to be "not to affect or discharge any
other security for any of said demands, *other than* the per-
sonal liability of said Williams." That qualifying clause was
inserted to preserve the full scope of the previous provision
releasing Williams from all liability on account of, that is,
originating in or springing from the mortgages. The obvious
meaning is that the releasor discharges no security which may
be enforced without involving the liability of Williams, and
preserves all such as can be enforced without bringing, as a
result, recourse against him. He was to be entirely dis-
charged at all hazards from every liability, direct or indirect,
and those securities were to be preserved, and those only
whose enforcement was consistent with that primary and
dominant purpose. Both parties may have believed that
since Fox was sole obligor in one bond, Williams would
stand as a surety mortgagor as to that, and so remedy could be
had against he Fox heirs without a recourse over to Williams.
Both parties, too, may have thought, what indeed is now
asserted, that the mortgages could be enforced against the
Grape Sugar Company without peril to Williams by reason
of its release of covenants, and so it is easy to see why the

reservation was made and its existing form. At all events it is limited and restrained, and the presence of the concluding phrase can have no force or explanation except to preserve the consistency of the instrument and its full effect as a discharge of Williams. This construction seems to us not only natural and reasonable, but fairly explains the large payment made by Williams and redeems it from the level of a marvelous and absurd folly.

But the appellant contends that even upon this construction the rights of the Grape Sugar Company were not infringed because it had already parted with those rights by its release of the Fox heirs and of Williams, previously executed. That release contains substantially two classes of provisions. It discharges the liability of the Fox heirs and of Williams upon the covenants in the deed, and then from all existing debts matured and unmatured. A large number of these, resting in notes of $5,000 each, are specifically mentioned, and a final covenant relating to the liabilities intended to be released, that the releasor has not parted with or impaired its title "to any such debts," indicates clearly that debts existing and to which the company had title were those referred to. It is not admissible to construe the release as operating upon debts non-existent, but possible to arise in the future. The argument on behalf of the appellant is, that a release of the covenants *ipso facto* discharged the equities possible to arise in favor of the covenantee against the covenantor. If that be true, the bare act of releasing the covenants made the land principal debtor for the mortgage, and amounted to an assumption by the Grape Sugar Company of the mortgage debt. No such agreement or intent is contained in the terms of the release, and must exist, if at all, as an inference, from the bare fact of a discharge of the covenants for a valuable consideration. I think that fact standing alone does not justify or compel the inference. If the actual consideration had been shown, and it had appeared that the covenantors paid to the covenantee the amount of the outstanding mortgages, or that for a less sum they agreed

to take the peril of a foreclosure, the inference would follow. But, where the consideration is unknown and unexplained, and may have been merely adequate to cover the technical breach of covenant already existing, and no agreement or purpose of assumption is proved, I think the asserted inference does not follow, the equitable duty of payment is not shifted, the debt remains the debt of Fox & Williams, .and the land chargeable only as surety. It is said that an express covenant destroys or restrains an implied one. That is true, but there are no implied covenants in a deed to be destroyed or restrained. The statute forbids them, and that fact demonstrates that the equities of a grantee whose land has been sold for another's debt, rest not at all upon any implied covenant, but upon the just needs of the situation as they appeal to the conscience of the court. Unless, then, the equities of the situation are changed by the fact of the release, they must necessarily remain. That the taking of covenants does not impair or destroy the equitable right of the grantee to be protected against the forced payment of a debt which he has not assumed has been often decided, and is established by the cases which on a foreclosure have preserved to the grantee, although holding covenants of warranty, the equitable right to have the lands of the grantor covered by the mortgage first sold and applied to its payment. If one equitable right survives the taking of covenants (*Clowes* v. *Dickinson*, 5 Johns. Ch. 235; *Skeel* v. *Spraker*, 8 Paige, 182), why may not another? It is possible that an equitable right precisely equivalent to the legal right on the covenants might prove to be suspended during the existence of such legal right, simply because equity does not waste its resources or act without necessity, but the equity would be merely suspended, and not killed. Its death could only come from such a change in the relation of the parties as would throw justly upon the grantee the burden of the debt. And so the question comes back and seems to me to be the ultimate inquiry whether the bare fact of a release of covenants of warranty for a valuable

consideration compels an inference that the releasor assumed as his own a mortgage debt of the grantor. I think not. Something more must appear to warrant the inference. In the present case, other and entirely different purposes may have occasioned the release. There may have been defects in the title not here disclosed and which the parties had principally in view; it may have had reference to the technical breach which already existed; or, what is more probable, it may have been given and received on the supposition that the grantors had already paid and settled the mortgage debt, or if not, that the releasors would have ample protection against loss in the very equities which they now invoke. For these reasons I cannot accede to the inference sought to be drawn, and since the equity remained and the necessity for its protection has come, I think it may be enforced.*

\*      \*      \*      \*      \*      \*      \*      \*

The judgment should be affirmed with costs.

All concur, ANDREWS, J., on second ground set forth in opinion.

---

*NOTE — The omitted portion of the opinion is the "second ground" referred to in *mem.* of decision. Payment of the mortgages was pleaded as a defense and was found by the trial judge. The court discuss the evidence bearing on that subject and come to the conclusion that it was sufficient to sustain the finding. — [Rep.