(112 App. Div. 378)

### ANDREWS v. REINERS.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

1. WITNESSES—TRANSACTION WITH DECEDENT—STOCKHOLDER OF CORPORATION.

Under Code Civ. Proc. § 829, in an action against a corporation for the death of plaintiff's intestate, a stockholder was not competent to testify that he did not put deceased to work on the scaffold which it was claimed was furnished by defendant, ·and fell under the deceased from defectiveness.

2. MASTER AND SERVANT—SERVANT'S INJURIES—EVIDENCE—SUFFICIENCY.

In an action for the·death of a servant, it appeared that one end of a scaffold on which he was at work descended, and that he fell therefrom, and it was shown that the scaffold was not a stationary one, but was suspended by ropes from pulleys, and it was part of the work of deceased to unfasten the ropes from time to time, and lower the scaffold by means of the pulleys. *Held*, that the mere fact that one end descended was no proof of defectiveness.

Appeal from Trial Term, Kings County.

Action by Annie Andrews, as administrator of Joseph T. Andrews, deceased, against H. & H. Reiners. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

See 96 N. Y. Supp. 1112.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

Ira Leo Bamberger, for appellant.
Frank F. Davis, for respondent.

GAYNOR, J. The witness Reiners being a stockholder of the defendant (a business corporation), the objection of the plaintiff to the questions to him concerning personal transactions between him and the deceased were properly sustained. He was not competent to testify that he did not put the deceased to work on the scaffold which it was claimed was furnished by the defendant and fell under him from

defectiveness and caused his death, and the like.  The test of interest in a witness under section 829 of the Code of Civil Procedure is the old common law rule of interest, and that rule classed stockholders of a corporation as interested witnesses in favor of the corporation in an action by or against it.  Gilbert v. Manchester Co., 11 Wend. 627. Such cases as Montgomery County Bank v. Marsh, 7 N. Y. 481, and Washington v. Palmer, 2 Sandf. 686, are no longer alive or applicable. They were rendered under sections 351 and 352 of the Code of Procedure of 1848, which became sections 398 and 399 in the revision of 1849).  These sections made stockholders of all corporations competent witnesses for the corporation, and that remained the rule until they were supersceded by the present Code provision.  The mere reading of them in connection with the Montgomery Bank and Washington Cases suffices to show this.  Section 829 by an amendment now excepts stockholders of banking corporations from the rule.  This I suppose was done under the mistaken notion of making the statute conform to the Montgomery Bank Case, which was erroneously taken as expressing a rule applicable to bank stockholders only, instead of to all stockholders.  There is no more reason to exempt bank stockholders than any other stockholders, and that case did not essay to do so.  Nor is the common law rule of this state that the taxpayers of a municipal corporation are not incompetent as witnesses for interest in an action by or against such corporation (Pack v. Mayor, 3 N. Y. 489) applicable. The same must be said of the case of Bopple v. Supreme Tent, 18 App. Div. 488, 45 N. Y. Supp. 1096, which may not be free from doubt in classifying the members of fraternal benefit societies with taxpayers of municipal corporations on this head of interest of witnesses.

The evidence that the scaffold gave way under the deceased at all is of a very improbable character.  There is none except by his son, an interested witness.  He says that Reiners, a stockholder and officer of the defendant, called him and his father from painting they were doing in the defendant's distillery, and set them to work painting the rear of one of a row of tenement houses of the defendant in the rear of the distillery and fronting on the next street; that the usual painter's scaffold, about 12 feet long, was already swung with ropes and pulleys about 25 or 30 feet from the ground; that he went to work on the ground painting the lowest part of the wall, while his father went to work painting on the scaffold; that while at work he heard a scream and a crash, and looking up saw that one end of the scaffold was two feet lower than the other and resting on the coping of the roof of the adjoining extension of the distillery, and that his father was not to be seen; that he ran out to the street through the house they were painting, and thence around into the distillery and up to its roof through a scuttle, and found his father lying unconscious there; that he accompanied him down through the scuttle and the distillery to the street, took him into a room of one of the row of tenement houses and staid there with him about two hours, and then walked home with him.  This was on September 27th, 1900.  The father died on October 2nd following of myelitis (inflammation of the spinal cord), as is claimed, which comes of several causes besides violence.  No mark of violence was noticed on him by the physician who was called in three days

after the alleged accident and treated him until he died, or by any one, except that one of the sons says he saw a black mark behind his ear after the undertaker had laid him out. The doctor as it plainly appears from his evidence was not told of any accident and did not know he was treating such a case. The son told no one in the distillery, there being twelve or more there, or any one in the tenement houses, which were filled with tenants, and called for no assistance; and while the father was at home before he died the mother and one of the sons wrote to Mr. Reiners on two different days that the father could not come to work as he was sick abed. None of them ever suggested that he had been hurt, and Mr. Reiners nor any one connected with the defendant was told of it or ever heard of it until this action was brought two years later, viz., about August 1st, 1902. There was no evidence whatever that any part of the scaffold or its attachments broke or gave way. Moreover, the evidence of the third party from whom the scaffold was hired, and who was called by the plaintiff, is that he delivered it to the deceased at the house where the painting was done on August 21st, and that it was returned in perfect condition on September 27th (the day of the accident). The coping on the roof of the extension on which the end of the scaffold is said by the son to have been resting when he looked up seems to have been of the usual height above the roof, a foot or two; which shows the extent of the father's fall, if he fell.

But the judgment cannot be sustained as matter of law. The defendant's motion to direct a verdict at the end should have been granted. The verdict rests on nothing but the proposition that the mere fact of the descent of the end of the scaffold to the coping (if it occurred) was evidence from which alone it could be found that the scaffold fell from defectiveness. This is necessarily so, for there was no evidence of anything lacking, or of any defect or break in the scaffold or its attachments. On the contrary, there was affirmative evidence from both sides that nothing was wrong with them. In other words, the maxim "The thing speaks for itself" was applied to the case. The main charge shows this, and in addition a subsequent request of the defendant that it be charged was granted. This was erroneous. The scaffold was not stationary. On the contrary, it was suspended by ropes through pulleys, and it was part of the work of the deceased or whoever worked on it to unfasten the ropes at the scaffold from time to time as his work progressed and lower it by the pulleys with himself upon it, until in that way he had the wall all painted and reached the ground. The deceased may have been lowering the end of the scaffold where he was when it is claimed he fell (a thing he had to do continually at short intervals), and let the rope slip. There was no evidence that he was not doing so. The maxim only applies where the accident could not have happened except from defectiveness of the appliance.

The judgment and order are reversed.

Judgment and order reserved, and new trial granted; costs to abide the event. All concur.