In the Matter of the Judicial Settlement of the Account of BANKERS TRUST COMPANY, as Sole Surviving Executor of the Last Will and Testament of THEODORE E. DEMMERLE, Deceased.

Surrogate's Court, Bronx County, October 26, 1927.

**Wills — construction — devise of " net estate " in excess of designated amounts, means so much of decedent's property as remained for distribution after payment of debts and expenses — agreements providing for purchase of one-half of decedent's stock in corporation by survivors in event of decedent's death before designated date did not obligate survivors to purchase — though sale of decedent's stock by executors on credit of over three years violated Surrogate's Court Act, § 214, executors had right to extend credit pursuant to terms of will — executors not chargeable with negligence in sale of stock or in failure to sue on note given therefor.— executors surcharged with amount of indebtedness due decedent where exercise of diligence would have brought about collection of claim — executors not guilty of lack of diligence in sale of real estate where will permitted sale in their discretion — claimant whose claim has been satisfied is competent witness in accounting proceedings as to personal transactions and conversations with decedent — interest charge at rate of two per cent and two and one-half per cent on balances in demand deposit account, proper.**

A devise of " net estate," in excess of designated amounts, means so much of decedent's property as remained for distribution after the payment of decedent's debts, funeral expenses and expenses of administration.

Agreements reciting that, in the event of decedent's death before a certain date, the two remaining stockholders owning the capital stock of a corporation, in which decedent was interested, would purchase one-half decedent's stock in six quarterly installments, the last of which was to be due eighteen months after decedent's death, did not impose absolute obligation on the part of the survivors to purchase decedent's stock, for it appears that the agreements also

provided that if the survivors failed to complete the purchase the corporation would be dissolved by voluntary proceedings.

Notwithstanding the fact that on the sale of personal property of a decedent for the payment of his debts, executors are limited by section 214 of the Surrogate's Court Act to extend credit for a period of one year, decedent's executors herein, under a plan for the purchase of decedent's stock, properly extended credit for a period of three years after decedent's death, since it appears that the will gave the executors the right to sell decedent's stock at public or private sale " either for cash or on credit　*　*　*　as the executors and trustees may deem, in their judgment to be advisable."

The executors cannot be charged with negligence based on selling the stock of the corporation instead of liquidating the corporation in voluntary dissolution proceedings as provided for in the agreement between the decedent and other stockholders, for at the time of the sale of the stock at the price specified in the agreement, it appeared certain that the estate would realize more from the sale than by a dissolution of the corporation.

The executors are not chargeable with negligence for failure to bring an action on one of the notes given by the brother of the decedent in payment for the stock of the corporation on the theory that the brother transferred his real estate, for it appears that the transfer of the real estate was made before the note became due, and it also appears that action was delayed because of negotiations with the brother for the settlement of the note, and, furthermore, the delay in suing on the note did not result in any loss to the estate, for at the time the note became due the brother was then insolvent.

The executors are not to be charged with failure to prosecute an action to set aside the transfer of the brother's property on the ground of fraud, since it appears that they were advised by counsel against such action, which advice was based on the belief that the estate would not profit by the action, and since it further appears that if an action had been instituted and the transfer set aside, the property would have become a part of the brother's estate to be distributed in bankruptcy proceedings then pending.

However, the executors are chargeable with a debt of the brother of the decedent which was due at the time of the death of the decedent, for they failed to make any effort to collect the debt at a time when the debtor was apparently solvent, and at a time before he transferred his real estate to his wife. Under the circumstances, it will be presumed that the debt was collectible and that it would have been collected if proper action had been taken, and, therefore, the executors are chargeable with that amount with interest.

The executors were not guilty of any lack of diligence in failing to dispose of certain real estate and securities owned by decedent, where it appears the will gave the residue of his estate, both real and personal, to said executors in trust with power to convert the same into money through a sale at such times as they might determine to be for the best interest of the estate.

The executors paid to the corporation, in which the decedent was interested, an alleged note made by the decedent to the corporation. Upon the hearing, objection was made to the testimony of a stockholder of the corporation as to conversations with the decedent. While this testimony would have been incompetent if the claim had not been paid, the witness was competent to testify in behalf of the accounting executors for the purpose of sustaining the action of the executors in paying the claim. The testimony of one of the executors of the estate of an executor of the decedent was not incompetent, since that executor could not gain or lose by testifying to personal transactions with the decedent.

The executors very properly charged themselves with interest at the rate of two per cent and two and one-half per cent on balances maintained in a demand deposit account, where it appears that those rates were the same allowed other depositors having the same kind of accounts.

PROCEEDING for the construction of a will.

*White & Case* [*Ernest G. Fifield* of counsel], for the executor.

*Bernard S. Deutsch,* for the objectant.

*Silas W. Sollfrey,* special guardian.

*Felix A. Muldoon* [*Sol Boneparth* of counsel], special guardian.

*Louis H. Hahlo,* for Henry Hartfield.

SCHULZ, S. The petitioning corporation is the sole surviving executor of the last will of the decedent, and in addition to asking for a judicial settlement of its accounts, it requests a construction of paragraphs "second" and "third" of the decedent's will. Three answers containing objections have been filed; one on behalf of a daughter of the decedent, a residuary legatee, and the others by special guardians for two groups of interested infant parties. The paragraphs of the will as to which construction is desired, so far as material to the question involved, provide as follows:

"*Second.* If my net estate shall exceed in value the sum of Fifty thousand Dollars ($50,000.00), then and in that event, I give and bequeath  *  *  *  [Here follow legacies to two sisters, a brother, three nieces and two nephews.]

"*Third.* If my net estate shall exceed in value the sum of Sixty thousand Dollars ($60,000.00), I give and bequeath  *  *  *  [Here follow additional legacies to some of the persons mentioned in paragraph second and also legacies to two sons-in-law.]

The petitioner alleges its doubt as to whether the words " my net estate " mean the net estate of the decedent as shown by the appraisal in the proceeding for the collection of the transfer tax, or as shown on the final accounting after the payment of debts and administration expenses.

No case in this State defining the term " net estate " has been drawn to my attention. However, in Michigan where it was found in a statute, the court considered it as meaning " the whole personal estate remaining after disposing of chattels specifically appropriated by statute, and the payment of debts, costs, allowances, expenses of administration, etc., for distribution among heirs or distributees." (*Phillips* v. *Phillips,* 91 Mich. 433.)

In Wisconsin the court stated that the net personal estate left by a testator is clearly " so much personal estate as was left after payment of debts, allowances, and charges, and all the expenses of administration, as well those expenses which were made neces-

sary by the will as those which would have been incident to the administering of the estate had he died intestate." (*Ford* v. *Ford*, 88 Wis. 122.)

In this State where the question was whether the decedent had violated section 17 of the Decedent Estate Law by attempting to bequeath and devise more than one-half of his estate to corporations of the character set forth in that section, it was held that to determine the size of the estate the debts of the decedent must be deducted from the value of the estate at the time of the decedent's death. (*Matter of Seymour*, 239 N. Y. 259; *Matter of Carnegie*, 203 App. Div. 91; affd., 236 N. Y. 517; *St. John* v. *Andrews Institute*, 191 id. 254, 274; *Matter of Brooklyn Trust Co.*, 179 App. Div. 262, 264.) There is no intimation that the value as found in the transfer tax appraisal is to be considered. In *Matter of Jones* (103 N. Y. 621), where the words " residue " or " net proceeds " were under consideration, the court construed this phrase to mean so much income remaining after the deduction of expenses and losses incurred.

In the light of the decedent's will, the words used seem self-explanatory. He does not refer to the value fixed by the tax appraiser. The latter's function was simply to fix the value of the various transfers for purposes of taxation, and his determination forms no basis for an accounting by the executor nor for a decree of distribution. I am satisfied that the testator when he used the words " net estate," meant so much of his property as remained for distribution after the payment of his debts, funeral expenses and expenses of administration, and I so hold.

It also became necessary to consider a claim made by the estate of a deceased executor against the estate of the decedent, for a debt due from the decedent to such executor. During the hearing, counsel for the adult parties agreed upon a settlement of the same, and the special guardians upon behalf of the infant parties raised no objection thereto, but submitted the same to the court for its approval and ratification. The same is ratified and approved subject to the rights, if any, which the decedent's estate or which any of the parties may have under their objections against the estate of the executor as finally determined herein.

The objections to the testimony of Aaron Marks, Louis H. Hahlo and Henry Demmerle as to conversations with the decedent with respect to such claim and the motions made to strike out such testimony, as to which decision was reserved, are no longer of importance because the claim which it was introduced to establish has been settled as stated, and the testimony is, therefore, allowed to stand. The motion to strike out exhibits as to which decision was reserved is denied, and exceptions accorded to the contestants.

Surrogate's Court, Bronx County, October, 1927.    [Vol. 130

While the objections to the account are numerous, the main issues arise out of the relations which the decedent had with a corporation of which he was a stockholder and the disposition of his stock therein by his executors, after his death.

The total capital stock of this corporation, Demmerle & Company, amounted to 1,200 shares, of which 400 were owned by the decedent, 400 by one Aaron Marks, and the remaining 400 by Henry Demmerle, a brother of the decedent. Various agreements existed between the stockholders with respect thereto. One established a voting trust for a period of five years, naming the decedent as one of the trustees, and in the event of his death, substituting his brother, Henry Demmerle, in his stead. The other agreements, so far as material to the present controversy, provided that in the event of the death of the decedent before a certain date, the remaining two were each to purchase one-half of his stock at a valuation of eighty dollars per share payable in six quarterly installments of which the last was to be due eighteen months after the death of the decedent, the stock to be indorsed in blank and left with the petitioner, but not to be transferred to the purchasers until full payment was made. No interest was to be paid. In case of the death of the decedent, notice of their intention to complete the purchase should be given in writing to his personal representative within sixty days. The agreement further provided that if the survivors failed to complete the purchase, the corporation was to be dissolved by voluntary proceedings in which the parties agreed to join.

Under this agreement, therefore, it appears, and I determine that there was no absolute obligation on the part of the survivors to purchase the stock of the deceased stockholder, which could have been enforced by an action for specific performance or from which a claim for damages might have arisen. If this were otherwise, the provisions for notice and for dissolution just referred to would seem superfluous.

The decedent died before the date stated, and the survivors failed to complete the purchase; hence that part of the agreement which provided for dissolution came into effect.

Instead of proceeding to liquidate, the executors entered into agreements with the other two stockholders by which the latter agreed to purchase the stock of the decedent at the same valuation, to wit, eighty dollars per share, the first payments to be made on July 2, 1923, and the balance in two annual installments, thus extending the payment of the full amount for over three years after the death of the testator, interest on a part of the purchase price at the rate of five per cent per annum to be paid in the mean-

time and the certificates to be transferred but held as security for the payment of the installments.

It is contended that the executors under the statute had no right to make the sale upon the conditions as to payment stated. Section 214 of the Surrogate's Court Act provides that the sale of the personal property of the decedent for the payment of his debts, etc., " may be public or private, and may be on credit not exceeding one year, with approved security." The extension of credit for three years, therefore, was a clear violation of the provisions of this section, and the right of the executors to grant the same, if any, must be found in the will itself.

Paragraph 15 of that document authorizes the executors to hold stocks, etc., belonging to the decedent at his death for such a time as they deem for the best interests of the estate, and " to sell the same at public or private sale, either for cash or on credit or partly for cash and partly on credit as said executors and trustees may deem, in their judgment to be advisable." As the statute gave an executor the right to sell on credit, this special authorization given by the decedent, who is presumed to have known the law, is evidence of his intent to give them a power greater than that conferred by statute. I conclude, therefore, that the executors had a right to extend credit for the period stated.

The duty of executors is to manage an estate with the same care as, in general, prudent men of discretion and intelligence, in such matters, employ in their own affairs. (*King* v. *Talbot*, 40 N. Y. 76; *Costello* v. *Costello*, 209 id. 252; *Matter of Cady*, 211 App. Div. 373.) Measured by this rule, these executors, when confronted with the alternative of liquidating the business of the corporation under the conditions disclosed by the evidence, with almost absolute certainty of loss, or of selling the stock to the persons designated by the decedent at a price fixed by him but upon a greater term of credit, were not chargeable with negligence when they chose the latter course. (*Leonard* v. *Leonard*, 201 N. Y. Supp. 113.) This is true even if subsequent events indicate that liquidation might have been the more profitable procedure. (*Matter of Varet*, 181 App. Div. 446; affd., 224 N. Y. 573; *Matter of Hosford*, 27 App. Div. 427.)

The executors under the agreement referred to, received notes from Aaron Marks for the sum of $16,000, and from Henry Demmerle for a like amount. The Marks notes have been fully paid, but of those of Henry Demmerle, only the first note, amounting to $3,200, was paid, leaving a balance of $12,800 due upon the other notes. The stock held as security was sold, but was bought in by the corporation for the sum of $1,000, and the corporation subsequently went into liquidation. Dividends were received on the

44

stock, and subsequently a judgment for $10,300 was recovered against Henry Demmerle. Thereafter he went through bankruptcy, and no part of the judgment has ever been paid. The contestants contend that the consequent loss to the estate was caused by the failure of the executors to exercise proper diligence and care in the administration of the estate.

The second note given pursuant to the agreement of sale was for the sum of $6,400, and became due on the 2d day of July, 1924. This was not paid, and by the terms of the agreement the executors had an option after a default of ten days to declare the notes then remaining unpaid immediately due and payable, and upon a notice of five days, and an advertisement for the same period, they had the right to sell the 200 shares of stock deposited with them as security. They were sold on October 1, 1924, at which time there were no substantial bidders and the estate bought them in as above set forth. Thereafter, and on December 23, 1924, an action was brought against Henry Demmerle upon the notes, and upon the debt hereinafter referred to and alleged to be due from Henry Demmerle to the decedent, and judgment upon the notes was entered on April 25, 1925. The execution was returned unsatisfied on June 18, 1925, and an order for examination in supplementary proceedings was obtained, but before such examination could be had and on June 29, 1925, the defendant filed a petition in bankruptcy. A, number of meetings of creditors were held at which the executors appeared by counsel, and a trustee was appointed with a nominal bond of $100 without opposition by them. Subsequently the bankrupt was discharged without opposition by the trustee. It also appeared that Henry Demmerle owned certain real estate and that he asked the attorney for the executors to draw a deed of the same to himself and his wife. This the latter declined to do, but subsequently a transfer was effected through some one else. It was claimed that a part of the property transferred had belonged to the grantee, and that the other had been purchased with her money, and it was also contended that the said transfer was made before the notes became due and while Henry Demmerle was solvent and that he had a right to make the same. The contestants claim that immediate action should have been taken upon the notes; that the executors should have insisted upon the trustee bringing an action to set aside the deeds in question, and that the failure of the executors to do this makes them liable for the amount that was due by Henry Demmerle to the estate.

The executors explain that the delay in selling the stock and proceeding with the action against Henry Demmerle was due to the fact that they were endeavoring to negotiate a settlement with him looking to the payment of the notes, and under the circum-

stances this does not appear to me to have been an imprudent thing to do, nor does it appear that any loss resulted therefrom, as Henry Demmerle had transferred his real estate before the second note became due, and the situation, therefore, when the judgment was entered, so far as the evidence discloses, was no different from what it was when the notes became due.

One of the executors was a personal friend of the decedent; the other a trust company. No reason is suggested why either one should have favored Henry Demmerle, nor is there any allegation or evidence of fraud. When confronted with the question whether it was advisable to go to the expense of litigation to set aside the transfer by Henry Demmerle to his wife, it was their duty to measure the possibilities of success against the expenses to be incurred. Not being lawyers, they consulted their counsel versed in such matters. Their attorneys in giving their advice, weighed the facts as they knew them, the possibility of success on the evidence they had, and considered the fact that any recovery would become a part of the bankrupt's estate and thus inure partly to the benefit of other creditors, whereas in the event of failure, the total expense would be upon the estate, and advised the executors against incurring this expense.

It seems to me the executors did what a reasonably careful and prudent man would have done in the premises. They were not required to plunge into litigation unless they had reasonable grounds for believing that they would succeed, and while the advice of counsel alone would not protect them for an action obviously against the interests of the estate or for one upon which they should have been able to form a judgment themselves (*Matter of Hayes*, 40 Misc. 500; *Matter of Hosford, supra; Matter of Belcher*, 129 Misc. 218), in a case like this, where the probabilities of success and ultimate profit by the estate were doubtful, their conduct in following the advice of their counsel was not such as to make them liable. Indeed, they would have merited censure if, under the circumstances, they had proceeded to litigate in the face of such advice and a loss had occurred. Executors are not charged with infallibility (*Matter of Pinchefski*, 179 App. Div. 578), and errors of judgment are made by them in administering estates, as they are by men carrying on their own affairs. They are expected to do the best that they can under all of the circumstances, and if their conduct has been guided by good faith, reasonable judgment and an honest intention to fairly and fully discharge their duty, they should not be surcharged with a loss which may then result. (*O'Conner* v. *Gifford*, 117 N. Y. 275; *Matter of Joost*, 50 Misc. 78; affd., 126 App. Div. 932; affd., 194 N. Y. 547; *McQuaide* v. *Perot*, 223 id. 75; *Costello* v. *Costello, supra; Thompson* v. *Brown*, 4 Johns. Ch. 619.)

Under the circumstances, I reach the conclusion that these executors were not negligent in failing to insist upon the litigation in question and dismiss the objections to the account which seek to surcharge them for loss resulting from the sale of decedent's stock in the corporation stated.

As to the failure of the executors to collect an alleged debt due to the decedent from Henry Demmerle, it appeared that immediately after the death of the decedent, his daughter, one of the contestants, advised the executors and their attorney, that Henry Demmerle had admitted to her that he owed the decedent the sum of $3,000. That was about May, 1922. A representative of one of the executors admits that she told him this, but that Henry Demmerle denied it, and the attorney for the executors did not deny that he was advised of it, and testified that Henry Demmerle would not commit himself either way. Proper diligence on the part of these executors should have prompted them to begin an action or take some steps looking toward the collection of the claim. (*Harrington* v. *Keteltas*, 92 N. Y. 40.) The situation was not the same as when the notes in the corporation matter became due over two years later at a time when the debtor had transferred his real estate. So far as the evidence indicates, nothing was done by the executors toward collecting this alleged claim, except to examine the decedent's records and to ask Henry Demmerle about it, until two years and seven months later, when it was included in the action brought on the notes. This was an unreasonable time to delay in enforcing the claim. At the time they were advised of it the real estate referred to was still in the name of Henry Demmerle, whereas when the action was brought it had been transferred by him, and before a judgment on that claim could be obtained, he had gone into bankruptcy. The law is that a man is presumed to be solvent rather than insolvent. (*Matter of Hosford, supra; O'Conner* v. *Gifford, supra,* cited in *Matter of Smith,* 123 Misc. 69.)

If, therefore, this was a just claim at that time, it must be assumed that it was collectible.

For the reasons stated, the executors will be surcharged with the said amount, with interest from the date of decedent's death.

After some general legacies and specific bequests, the testator by the 13th paragraph of his will bequeathed and devised the residue of his estate, real and personal, to his executors in trust to convert the same into money subject to the conditions contained in his will, and thereafter in paragraph 18 he gave them a power to sell his real estate at such times as they might determine to be for the best interests of his estate. Such real estate, however, in which his brother, Henry Demmerle, had an interest was not to be sold until

two years after his death, except upon the written request of his brother. While it is to be deplored that the real estate could not be sold at a reasonable price before this time, the evidence does not show any lack of diligence on the part of the executors and trustees in failing to dispose of the same or of the securities owned by the decedent, and the objections relating thereto are dismissed.

Considering the size of the estate, the services rendered and the time during which the various attorneys acted for the executors, I do not consider the fees paid exorbitant and the objection thereto is dismissed.

As to the item of $3,771.01 paid to Demmerle & Company on account of an alleged note made by the decedent to the corporation, the note was not produced, but the books of the company indicate that it was given as alleged. Upon the hearing additional evidence to that effect was offered. Objections were made to the competency of the witnesses, Aaron Marks and Louis H. Hahlo, under section 347 of the Civil Practice Act, and motions were made to strike out their testimony upon which decision was reserved.

No direct interest disqualifying Mr. Marks was shown, and if he is barred, it must be because he was a stockholder of Demmerle & Company, to whom the note was paid. If this claim still existed and was unpaid, he would come under the prohibition. (*Andrews* v. *Reiners*, 112 App. Div. 378; *Keller* v. *West, Bradley & Cary Mfg. Co.*, 39 Hun, 348; *Murray* v. *Fox*, Id. 108, 115; affd., 104 N. Y. 382.) Where the claim has been paid and satisfied, however, as in this case, it has been held that the claimant is competent to testify in behalf of an accounting representative as to personal transactions and conversations with a decedent to establish the justice of the claim. (*Matter of Frazer*, 92 N. Y. 239; *Matter of Lese*, 176 App. Div. 744; *Matter of Swiller*, 205 id. 302; *Matter of McNeany*, 5 id. 456.) And while this holding has been criticized, it has nevertheless been followed (*Matter of Mulligan*, 82 Misc. 336; affd., 165 App. Div. 912; 216 N. Y. 720), and I am constrained to follow it now. If, however, I am in error with respect to this testimony, the other evidence, as to the existence of the note, is sufficient to warrant me in reaching the conclusion which I do.

Mr. Hahlo is one of the executors of the estate of William Hartfield who was one of the executors of this decedent's will. He personally does not stand to gain or lose by testifying as to a personal transaction with the latter, not even in the matter of his commissions, because they would be the same whether he were compelled to make a refund or not.

To disqualify a witness he must stand to gain or lose by giving the testimony, in money or relief from liability, or because the

record could be used against him. His interest must be a present certain vested interest and not uncertain, remote or contingent. (*Talbot* v. *Laubheim,* 188 N. Y. 421, affg. 111 App. Div. 915; *Lecour* v. *Importers & Traders' National Bank,* 61 id. 163; *Kerwood* v. *Hall,* 201 id. 89.) The record must not merely leave open the possibility of another action. It must be legal evidence in some other action or proceeding for or against the witness. (*Hobart* v. *Hobart,* 62 N. Y. 80; *Franklin* v. *Kidd,* 219 id. 409.) The objections, therefore, are overruled, the motion to strike out is denied and exceptions accorded to the contestants.

The burden of showing that the claim was void or improperly paid was upon the contestants. (*Matter of Frazer, supra; Farrell* v. *Farrell,* 206 App. Div. 209; *Matter of Warrin,* 56 id. 414; *Boughton* v. *Flint,* 74 N. Y. 476.) This burden has not been sustained. The objections to the payment of this claim, therefore, are dismissed.

The executors charge themselves with interest at the rate of two per cent and two and one-half per cent on balances in their hands from time to time. The funds were kept on a demand deposit with one of the executors, a banking institution, and the rates allowed were those at which interest was paid to other depositors having the same kind of accounts. Under the law, this was proper and the objection thereto cannot be allowed. (Banking Law, § 188; *Herzog* v. *Title Guarantee & Trust Co.,* 148 App. Div. 234; modified in other respects, 210 N. Y. 531; *Matter of People's Trust Co.,* 169 App. Div. 699.) Some discussion arose upon the hearing as to how much of the amounts allocated to the trusts was principal and how much interest. It appears that all of such amounts paid over to the trustees were paid out of principal, so that the executors continue to be charged with the net amount of income as shown in the summary statement. This was conceded by the accountant, and should appear in the decree.

As to the income referred to in objection 37 of Annie E. Giesen, the same is subject to the provisions of the will. The application to remove one of the persons from the trust office, contained in said objection, is denied, with leave to renew after the entry of the decree herein in case of non-compliance with any of its provisions.

The evidence establishes the fact that the war savings certificates listed in Schedule "A" of the account and aggregating $583.92, were the property of Rosebel E. Paulson, Theodore Paulson, William A. Giesen, Jr., and George Paulson, as claimed by one of the special guardians, and that the proceeds of the sale thereof, as also the income received thereon, form no part of the estate of the decedent, and I so hold.