In the Matter of the Will of JOHN J. FLANAGAN, Deceased.
CONSTANCE L. FLANAGAN et al., as Executors and Trustees,
Petitioners; THEODORE G. KENEFICK, as Special Guardian for
JOHN G. FLANAGAN et al., Infants, Respondents.

Surrogate's Court, Erie County, May 11, 1945.

*Edward J. Garono* for petitioners.

*Theodore G. Kenefick,* special guardian for John G. Flanagan
and others, infants, respondents.

VANDERMEULEN, S. John J. Flanagan died in the city of
Buffalo, New York, on February 18, 1944, leaving a last will
and testament which was admitted to probate in this court on
April 20, 1944. Letters testamentary and of trusteeship were
issued to Constance L. Flanagan, widow of the deceased, and
the Manufacturers and Traders Trust Company. The deceased
left him surviving his widow, the said Constance L. Flanagan,
and three infant children, John G. Flanagan, aged 20, Jane
Flanagan, aged 19, and Ann Flanagan, aged 14.

The deceased was a minority stockholder in the National Manufacturing Company, owning 7,150 shares of common stock. The majority of the stock in the said company is held by Clinton Brown, President of the company, and members of his family and other officers and employees. The executors and trustees have entered into a contract with the National Manufacturing Company and such of its employees, officers, directors and stockholders as the corporation may designate, giving them an — option to purchase the 7,150 shares of common stock of the company for the sum of $11.25 per share, of which not less than 1,600 shares are to be paid for in cash at the full purchase price at the time of delivery, and the balance of 5,500 shares, or any part of said stock not purchased by full payment in cash, by a down payment of $3.25 per share at the time of the delivery and transfer to the individual purchasing the same and not less than $1.75 more per share one year after date of such transfer and an equal amount each year until the whole of said purchase price is paid, which must be within five years, together with interest at 4% per annum. At the hearing, the contract (in which further terms are disclosed) was introduced in evidence and other testimony given concerning the proposed sale.

In this proceeding, the petitioners pray for a determination as to the validity, meaning and extent of the powers and authority of the executors and trustees as set forth in paragraph " ninth " of the decedent's will, and particularly relating to the sale of the afore-mentioned stock, and the validity and construction and effect of any other paragraph or provision of the deceased's will, so far as the same may relate to and/or affect the sale, terms, price and/or sale on credit of the stock of the National Manufacturing Company owned by the estate, or as to any matter therein involved, and also for advice and direction as to the propriety, price, manner and time of sale of the said stock, particularly as to the proposed sale referred to in the option agreement annexed to the petition.

Paragraphs " Eighth " and " Ninth " of the will read as follows:

" EIGHTH: I hereby give to my Executors and Trustees, hereinafter named, power to invest the funds of my estate in such securities, other than those authorized by law of the State of New York, as to such Executors and Trustees may seem to be for the best interests of my estate, and I *direct and authorize* my Trustees to retain any or all securities or other property of which I may die seized and possessed, to be used as a part or whole of any trust or trusts herein created.

"NINTH: I hereby give and grant to my Executors and Trustees hereinafter named full power and authority to grant, sell, bargain, alien, lease, mortgage and convey any and all of my estate, both real and personal, of which I may die seized and possessed, *as fully as I might do if living,* and I expressly declare that no person appointed as Executor and Trustee of this my Last Will and Testament shall either give or be required to give any bond or security for the performance of his or her duty as such." (Italics supplied.)

These paragraphs must be read together in arriving at a determination as to the authority of the executors and trustees to extend credit beyond the limits set forth in section 214 of the Surrogate's Court Act*. Were it not for paragraph " Ninth ", the words " I direct and authorize " would be deemed to be mandatory. It is hardly conceivable that the deceased would authorize the drafting of paragraph " Ninth " if he intended these words in .paragraph " Eighth " to be mandatory. Regardless of the definition, force and effect of these words standing alone, when read in connection with the entire will, a different construction is justified. To hold the words " direct and authorize " to be mandatory would tend to destroy the full force and effect of the grant of power to the executors and trustees in paragraph " Ninth." I am therefore constrained to hold that the deceased intended to authorize the executors and trustees in their discretion to retain any or all securities or other property. It appears to me that the word " direct " is surplusage.

The first possible impediment to the sale of this stock having been overcome by the construction set forth in the preceding paragraph, the question now presented is whether under the wording of paragraph " Ninth " the executors and trustees are authorized to sell the stock on a longer term of credit than permitted under section 214 of the Surrogate's Court Act.

In *Matter of Demmerle* (130 Misc. 684, 689) where it was contended that the executor violated section 214 of the Surrogate's Court Act by making the sale on credit exceeding one year, the following provision of the will was involved: " to sell the same at public or private sale, either for cash or on credit or partly for cash and partly on credit, as said executors and trustees may deem, in their judgment to be advisable."

---

* This section permits a public or private sale of personal property for the payment of debts, or legacies or for making distribution, which may be on credit not exceeding one year, with approved security.— [REP.

The court said: "As the statute gave an executor the right to sell on credit, this special authorization given by the decedent, who is presumed to have known the law, is evidence of his intent to give them a power greater than that conferred by statute. I conclude, therefore, that the executors had a right to extend credit for the period stated." (See, also, *Leonard* v. *Leonard,* 201 N. Y. S. 113.)

The stock proposed to be sold is a minority interest in a close corporation, which is usually hard to sell. The evidence disclosed that the dividends to be paid on the stock would be less than the amount of interest which would be received under the proposed arrangement. Based on all the testimony and facts presented, I am of the opinion that the sum of $11.25 is the best that can be obtained and is a fair and reasonable price under all the circumstances, and further, it is for the best interest of the estate that it be sold at that figure.

The executors are hereby advised and directed to complete the transaction.

Submit decree accordingly.