In the Matter of the Judicial Settlement of the Accounts of HARRY PINCHEFSKI, Guardian of JACOB PINCHEFSKI, a Minor, Respondent.

AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

Third Department, July 2, 1917.

**Guardians — liability of guardian ad litem for loss in managing infant's estate — misappropriation by attorney of money intrusted to him for investment.**

The rule that an executor, guardian or other trustee is not a guarantor for the safety of the funds committed to his charge, and does not warrant their safety under any and all circumstances and against all contingencies,

accidents or misfortune, does not protect a guardian who has delegated to another one of the duties imposed by his office where a loss is occasioned thereby.

A guardian must manage in person the ward's estate, and if he does not he must take the consequences.

Hence, a guardian *ad litem* of an infant, authorized to settle an action for personal injuries, who, after receipt of the money from an attorney, permitted the latter to invest it, is liable to the infant for loss resulting from the attorney's misappropriation of said money.

APPEAL by the American Surety Company of New York, surety upon the bond of Harry Pinchefski, as general guardian of Jacob Pinchefski, an infant, from a decree of the Surrogate's Court of the county of Schenectady, entered in the office of said Surrogate's Court on the 27th day of July, 1915, judicially settling the accounts herein.

*William Dewey Loucks,* for the appellant.

*James C. Cooper,* for the respondent.

SEWELL, J.:

There was no dispute as to the facts upon which the decision of the surrogate was based. They are as follows: Harry Pinchefski was duly appointed general guardian of his son, Jacob Pinchefski, on the 29th day of September, 1910. Sometime prior to the appointment the infant was injured by a car of the Schenectady Railway Company, the father was appointed guardian *ad litem* and an action was commenced against the company to recover damages for the injury. On the 29th day of September, 1910, an order was made authorizing the guardian *ad litem* to settle the action, upon the payment by the company of $2,250, and upon the receipt by the said Harry Pinchefski as the general guardian of said plaintiff of that sum less $750 to be paid to Benjamin Terk, his attorney. On the 4th day of October, 1910, the check of the company for $2,250 was delivered to Terk, payable to the order of " Benjamin Terk, attorney," and a release executed by Harry Pinchefski, as the general guardian of Jacob Pinchefski, was thereupon delivered to the company. The guardian testified that when he asked Terk for the money he said, " Have you got a place you can place that money on first mortgage? Are you satisfied to place it on first mortgage. I said yes I

was satisfied; " that the next day Terk took him to look at a place on Brandywine avenue, in the city of Schenectady, and asked him if he was satisfied to place it there and he said he was; that Terk then said, " all right, come up a few days later; " that when he called, Terk said, " I placed it," and gave him a paper purporting to be a bond for the sum of $3,000, dated October 21, 1910, executed by Samuel Brody to Harry Pinchefski, as general guardian of Jacob Pinchefski, an infant, and that Terk then said that the appellant had the mortgage. It appeared that no mortgage was delivered to the appellant; that the bond was forged; that the guardian received no part of the money and that Terk appropriated all of it to his own use and absconded during the summer of 1911.

Proceedings were begun by the appellant October 29, 1912, to be relieved from further responsibility on account of any future breach of the condition of the bond, and on the 17th day of December, 1912, an order was made revoking the letters of guardianship and requiring the guardian to cause his accounts to be judicially settled. Upon such an accounting the guardian was adjudged liable to pay to the guardian to be appointed to succeed him the sum of $1,500, with interest at the rate of three and one-half per cent from October 4, 1910.

The main question on this appeal is as to the liability of the guardian to his ward upon these facts. The rule undoubtedly is, as claimed by the appellant, that an executor, guardian or other trustee is not a guarantor for the safety of the funds committed to his charge and does not warrant such safety under any and all circumstances and against all contingencies, accidents or misfortune. He is only " bound to employ such diligence and such prudence in the care and management as in general prudent men of discretion and intelligence in such matters employ in their own like affairs." (*King* v. *Talbot,* 40 N. Y. 85.) This rule, however, does not protect a guardian who has delegated to another one of the duties imposed by his office, and a loss is occasioned thereby. It is a well-established and elementary principle of law relating to the duties and obligations of a guardian, that he must manage in person the ward's estate and if he does not he must take the consequences.

In Lewin on Trust and Trustees (Vol. 1, p. 252) it is said that " Trustees who take on themselves the management of property for the benefit of others have no right to shift this duty on other persons; and, if they do so, they remain responsible toward their *cestui que trust* for whom they have undertaken the duty. If a trustee, therefore, confides the application of the trust funds to the care of another, whether a stranger, or his own attorney or solicitor, or even co-trustees or co-executors, he will be personally responsible for any loss that may result."

This does not mean that a guardian cannot employ an attorney to collect a claim, but that after the money has been collected, it is the duty of the guardian to keep in his own hands the control over it. He cannot delegate to another the doing of a thing he is in duty bound to do himself.

It is clear that Terk's duty as an attorney or collecting agent had ended when the guardian surrendered his control over the money collected and entered into an arrangement with him to invest it, and that Terk thereupon became simply an agent to whom the guardian attempted to delegate one of his duties. Letters of guardianship are a trust. They are granted by the Surrogate's Court because of confidence reposed in the grantee. They require him to take exclusive charge of the personal property of his ward, and if he entered into any arrangement by which he surrendered or limits his control over it he remains responsible to his *cestui que trust* for whom he has undertaken the duty. This is an eminently salutary rule and applies to such an arrangement as is shown by the facts herein. The decree of the Surrogate's Court should be affirmed, with costs.

Decree unanimously affirmed, with costs.